SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Bruce Kaye v. Alan P. Rosefielde (A-93-13) (073353)**

**Argued February 3, 2015 – Decided September 22, 2015**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a court may order the equitable remedy of disgorgement of an employee's compensation when the employee has breached his or her duty of loyalty to the employer, but the employer has not sustained economic loss as a consequence of the breach.

Plaintiff Bruce Kaye, the controlling principal of three entities that sell and manage timeshare interests in resort properties in Atlantic County, hired defendant Alan P. Rosefielde, an attorney admitted to practice law in New York but not in New Jersey, initially as outside counsel, and then as an employee. After defendant had worked closely with plaintiff for approximately four months, the parties entered an agreement providing that, as compensation for his services, defendant would earn an annual salary of $500,000. For approximately two years, defendant served as Chief Operating Officer for several of the timeshare entities, and effectively functioned as their general counsel. In that capacity, defendant committed serious misconduct by acting on his own behalf instead of for his employers' benefit, and exposing his employers to potential liability. Based on this misconduct, and dissatisfaction with defendant's performance, plaintiff terminated defendant's employment.

Plaintiff Kaye and the companies that employed defendant commenced suit against defendant, asserting claims for breach of fiduciary duty, fraud, legal malpractice, unlicensed practice of law, and breach of the duty of loyalty. In addition to claiming compensatory and punitive damages for the alleged disloyalty, plaintiffs sought rescission of the parties' agreements and disgorgement of monies received by defendant or his company. Following a lengthy trial, the court found that defendant engaged in egregious conduct, including self-dealing, fraudulent acquisition of an ownership interest in one of the entities, and conspiracy to forge deeds to various properties, which the court held to constitute a breach of his duty of loyalty, breach of fiduciary duty, legal malpractice, and civil fraud. The trial court rescinded defendant's interest in several entities, and awarded compensatory damages, punitive damages and legal fees. Although the trial court stated that it is difficult to imagine the commission of more egregious conduct by a corporate officer, it declined to order the equitable disgorgement of defendant's salary as a remedy for breach of the duty of loyalty, because the breach did not result in any actual damage to the plaintiff entities, which it believed was required by Cameco, Inc. v. Gedicke, 157 N.J. 504 (1999).

The Appellate Division affirmed in part, and reversed in part, the determinations by the trial court. The trial court's determination that plaintiffs were not entitled to the remedy of disgorgement was affirmed. 432 N.J. Super. 421 (App. Div. 2013). This Court granted certification, limited to the issue of whether a court may award the remedy of disgorgement of a disloyal employee's salary to an employer that has sustained no economic damage. 217 N.J. 586 (2014).

**HELD:** In accordance with the broad discretion afforded to courts fashioning equitable remedies that are fair and practical, the remedy of equitable disgorgement may be awarded in an appropriate case even in the absence of a finding that the employer sustained economic loss as a result of the employee's disloyal conduct. If a court determines that disgorgement is an appropriate equitable remedy, it should apportion that compensation and order disgorgement of only the compensation received during the period in which the employee breached the duty of loyalty.

1. Whether equitable disgorgement is permitted without proof of actual damages is a question of law for which appellate review is de novo, and therefore no deference is owed to the legal conclusions reached by the trial court and the Appellate Division. (p. 14)

1

2. The duty of loyalty requires that, while employed, an employee not act contrary to the employer's interest in all matters connected with the employment relationship. The contexts giving rise to claims of employee disloyalty are so varied as to preclude mechanical application of abstract rules of law, and therefore require a fact-specific analysis, as this Court recognized in Cameco, under the factors stated there. Under those factors, a court considers the parties' expectations of the services that the employee will perform in return for his or her compensation, as well as the egregious nature of the misconduct that leads to the claim. (pp. 14-16)

3. The appropriate relief for a breach of the duty of loyalty likewise depends upon the specific facts of the matter, which can warrant either legal or equitable relief. While the exercise of equitable discretion is not governed by fixed rules and principles, implicit in the process is the exercise of conscientious judgment directed by law and reason toward a just result appropriate to the specific dispute. (pp. 17-18)

4. One of the equitable remedies available for a breach of the duty of loyalty is the disgorgement of the disloyal employee's past compensation. The remedy of disgorgement is derived from principles of contract law that recognize that if the employee breaches the duty of loyalty at the heart of the employment relationship, he or she may be compelled to forego the compensation earned during the period of disloyalty. The disgorgement remedy is consonant with the purpose of a breach of the duty of loyalty claim because, when an employee abuses his or her position and breaches the duty of loyalty, the employee fails to meet the employer's expectation of loyalty in the performance of the job duties for which he or she is paid. Disgorgement may also have a valuable deterrent effect providing notice that adverse consequences will follow a breach of the duty of loyalty. (pp. 18–20; 24-25)

5. This Court, in Cameco, recognized that disgorgement is not precluded by the absence of monetary damages proximately caused by the employee's disloyalty, and cited with approval principles stated in the Restatement (Second) Agency, at section 469, to the same effect. The Court reaffirms the principles stated in Cameco, recognizing that an employer may seek disgorgement of a disloyal employee's compensation, even in the absence of economic loss. This view is also consistent with the Restatement (Second) Agency, at section 469, comment a, and the Restatement (Third) Agency, at section 8.01, comment d (2). The Court further states that requiring an employer to demonstrate that it has sustained economic loss would conflict with the justifications for disgorgement. (pp. 21-25)

6. The trial court should consider the following factors in deciding whether disgorgement is an appropriate remedy: the employee's degree of responsibility and level of compensation, the number of acts of disloyalty, the extent to which those acts placed the employer's business in jeopardy, and the degree of planning to undermine the employer that is undertaken by the employee. Where appropriate, a trial court should apportion the employee's compensation, rather than ordering a wholesale disgorgement that may be disproportionate to the misconduct at issue. (pp. 26-27)

7. Based on these principles, the Court reverses the determination of the Appellate Division on the claim for disgorgement, and remands the matter to the trial court to determine whether that remedy should be imposed. If the trial court determines that plaintiffs are entitled to disgorgement, it should apportion defendant's compensation and order disgorgement only for pay periods in which he committed acts of disloyalty. (pp. 27-28)

The judgment of the Appellate Division is **REVERSED** with respect to the remedy of equitable disgorgement, and the matter is **REMANDED** to the trial court for further proceedings consistent with this decision.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE FERNANDEZ-VINA did not participate.**

BRUCE KAYE, Individually and as TRUSTEE
OF THE BRUCE KAYE REVOCABLE TRUST and
the BRUCE KAYE DYNASTY TRUST, JASON
KAYE, FLAGSHIP RESORT DEVELOPMENT
CORPORATION, FIRST RESORTS MANAGEMENT
COMPANY, INC., ATLANTIC PALACE
DEVELOPMENT, LLC, and LA SAMMANA
VENTURES, LLC,

     Plaintiffs-Appellants,

         v.

ALAN P. ROSEFIELDE, PLUMROSE COMPANY,
INC., and ROSE ASSOCIATES, INC. OF
MIAMI,

     Defendants-Respondents,

         and

LA SAMMANA MANAGEMENT, LLC, and BA
MANAGEMENT, LLC,

     Defendants,

         v.

DEBORAH KAYE, 2000 BRUCE KAYE
DYNASTY TRUST, HOWARD ALTER, SUSAN
TUNNEY, MICHAEL VALENTI, RONNIE
STRANSKY, KENNETH WOLFE, and
DENNIS RICHARD,

     Third-Party Defendants.

     Argued February 3, 2015 – Decided September 22, 2015

     On certification to the Superior Court,
     Appellate Division, whose opinion is

reported at 432 N.J. Super. 421 (App. Div. 2013).

Edwin J. Jacobs, Jr., argued the cause for appellants (Jacobs & Barbone, attorneys; Mr. Jacobs and YooNieh Ahn, on the brief).

John C. Connell argued the cause for respondents (Archer & Greiner, attorneys; Mr. Connell and Benjamin D. Morgan, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, we determine whether a court may order the equitable disgorgement of an employee's compensation when the employee has breached his or her duty of loyalty to his or her employer, but the employer has not sustained economic loss as a consequence of that breach.

This matter arose from a dispute between Bruce Kaye (Kaye), who managed several timeshare business entities, and Alan Rosefielde (Rosefielde), an attorney whom Kaye initially retained as outside counsel and later hired as an employee. For approximately two years, Rosefielde served as Chief Operating Officer (COO) of some of Kaye's timeshare businesses, and functioned, in effect, as those entities' General Counsel. In that capacity, Rosefielde committed serious misconduct by acting on his own behalf instead of acting for his employers' benefit and exposing his employers to potential liability. That misconduct, among other issues, led to Rosefielde's dismissal and this litigation.

2

Kaye, in his individual capacity and as trustee of two trusts, Kaye's son Jason Kaye, and business entities that Kaye owned sued Rosefielde and several entities. Plaintiffs asserted claims based on Rosefielde's breach of fiduciary duty, fraud, legal malpractice, unlicensed practice of law, and breach of the duty of loyalty. Following a lengthy bench trial, the trial court found that Rosefielde engaged in egregious conduct constituting a breach of his duty of loyalty, breach of his fiduciary duty, legal malpractice, and civil fraud.

The trial court rescinded Rosefielde's interest in several entities, awarded compensatory damages, punitive damages, and legal fees, and dismissed Rosefielde's counterclaims. It declined, however, to order the equitable disgorgement of Rosefielde's salary as a remedy for his breach of the duty of loyalty, on the ground that his breach did not result in damage or loss to the entities that employed him. The Appellate Division affirmed that determination, and this Court granted certification on the issue of equitable disgorgement.

Relying on this Court's holding in Cameco, Inc. v. Gedicke, 157 N.J. 504 (1999), and other authority, we hold that the remedy of equitable disgorgement is available to a trial court even absent a finding that the employer sustained economic loss by virtue of the employee's disloyal conduct. In accordance with the broad discretion afforded to courts fashioning

3

equitable remedies that are fair and practical, a trial court may order disgorgement of an employee's compensation as a remedy for a breach of loyalty in an appropriate case. If a court determines that disgorgement is an appropriate equitable remedy, it should apportion that compensation and compel disgorgement of only the compensation that the employee received during pay periods in which he or she acted in violation of the duty of loyalty.

Accordingly, we reverse the determination of the Appellate Division on this issue and remand to the trial court to determine whether the remedy of disgorgement should be imposed in this case.

I.

A.

We derive our account of the dispute that led to this litigation from the trial court's factual findings.[1] Kaye is the controlling principal of three entities created to sell and manage timeshare interests in resort properties in Atlantic

---

[1] The trial court's factual findings, briefly summarized herein, are described in greater detail in the Appellate Division's comprehensive opinion. Kaye v. Rosefielde, 432 N.J. Super. 421, 431-53 (App. Div. 2013). Although Rosefielde disputed many of the trial court's factual findings, before this Court he challenges neither the trial court's factual findings nor its conclusion that he breached his duty of loyalty. Accordingly, we make no determination regarding the evidentiary support for those findings.

County: plaintiff Flagship Resort Development Corporation (Flagship), plaintiff Atlantic Palace Development, LLC (Atlantic Palace), and plaintiff La Sammana Ventures, LLC (La Sammana Ventures). In 1997, Kaye retained Rosefielde, an attorney admitted to practice law in New York, but not New Jersey, to represent him personally on tax and estate planning matters, and to provide legal services to some of the business entities he owned.

In 2002, Rosefielde accepted an offer from Kaye to work for his business entities as a full-time, salaried employee. In December 2002, after Rosefielde had been working closely with Kaye for approximately four months, Kaye and Rosefielde entered into a formal agreement. Under the terms of that agreement, Rosefielde would earn an annual salary of $500,000, to be paid to his company, defendant Plumrose Company, Inc. (Plumrose), on a monthly basis, in equal shares by Flagship and Atlantic Palace.[2] The trial court found that Rosefielde served as both

---

[2] The salary was characterized as a "retainer" on monthly invoices submitted by Rosefielde. The parties agreed that Rosefielde would work autonomously and that he would not be required to report to a superior. Although the terms of the business arrangement suggest an intent that Rosefielde function as an independent contractor, and the record suggests that it was anticipated early in the relationship that Rosefielde would serve in that capacity, the parties agree that he was an employee of the entities for which he served as COO and provided legal services. We thus address the issue before us on the assumption that Rosefielde was an employee.

5

COO and General Counsel of Flagship and Atlantic Palace, and that his two roles were "inextricably intertwined." Based on the trial court's findings, Rosefielde committed serious misconduct in his handling of several transactions during his two-year tenure as an employee of these entities.

The first incident of misconduct was the creation in February 2003 of a separate entity, La Sammana Management, LLC (La Sammana Management), to manage the timeshare interests owned by La Sammana Ventures. According to Kaye and other witnesses, Rosefielde urged Kaye to form this new entity. However, instead of precisely following Kaye's instructions for the allocation of interests in La Sammana Management, Rosefielde drafted the operating agreement so as to increase his personal interest in the company and that of one of his companies, defendant Rose Associates, Inc. (Rose Associates), beyond the interest that had been agreed to by Kaye. The trial court also found that, between December 2003 and July 2004, Rosefielde orchestrated the diversion of another employee's ten percent interest in La Sammana Ventures to himself, contrary to Kaye's wishes; that diversion was not discovered until nearly two years later, when Rosefielde's employment was terminated.

Second, in September 2004, unbeknownst to Kaye, Rosefielde created a new entity, defendant BA Management, LLC (BA Management), in which his company Rose Associates had a twenty

6

percent ownership interest.  Though Rosefielde testified that BA Management would manage the sale of only La Sammana Ventures timeshares, its operating agreement recited that the company was established to "manage the sale of timeshare units throughout the world."  Rosefielde further testified that it would manage those timeshares in exchange for a ten percent management fee.  According to the trial court's factual findings, Rosefielde obtained the signatures of Kaye and his son Jason Kaye on the operating agreement by "false pretenses."  He presented them with a signature page, advising them that their signatures were needed for a document relating to the son's trusts; they did not realize until later that they had agreed to form a new entity to Rosefielde's benefit.

Third, following defaults in 2003 and 2004 by timeshare unit owners who could not be located, Rosefielde decided not to pursue costly foreclosure proceedings.  Instead, throughout 2003 and 2004, Rosefielde arranged for the signatures of defaulting timeshare owners to be forged on false quitclaim deeds, and reassured employees who were suspicious of the deeds that they were valid.

Fourth, in May 2004, Rosefielde applied for health insurance for the Flagship and Atlantic Palace sales representatives, who were all independent contractors, by misrepresenting the contractors' employment status to an

7

insurance company.  In the insurance application, Rosefielde identified a dormant corporation that he personally owned, Paradise Global Realty, Inc. (Paradise), as the employer of the sales representatives, and verified the application as both the dormant company's president and its attorney.  A Flagship employee then created letterhead for Paradise, and Rosefielde signed a letter to the insurer falsely representing that the sales representatives were full-time employees of Paradise.  On the basis of Rosefielde's misrepresentations, the insurer issued health insurance to the independent contractors.

Fifth, in March 2004, Rosefielde billed Flagship $4000 for expenses incurred during a trip to Las Vegas that was not business-related.  During that trip, Rosefielde stayed in a hotel suite with three women who, according to other employees who were also on the trip, were adult film stars.

Finally, the trial court found that Rosefielde made multiple inappropriate sexual advances toward two women employed by Flagship, subjecting his employer to a risk of liability for sexual harassment claims.

On January 13, 2005, following his discovery of some of Rosefielde's misconduct and dissatisfaction with Rosefielde's performance, Kaye terminated Rosefielde's employment as COO and General Counsel of Flagship and Atlantic Palace.

B.

8

Following the termination of Rosefielde's employment, this action was brought in the Chancery Division by Kaye (in his individual capacity and as Trustee of the Bruce Kaye Revocable Trust and the Bruce Kaye Dynasty Trust), his son Jason Kaye, and four corporate entities, Flagship, First Resorts Management Company, Inc., Atlantic Palace, and La Sammana Ventures. Plaintiffs named as defendants Rosefielde individually, his companies Plumrose and Rose Associates, and the two jointly owned entities involved in Rosefielde's alleged misconduct, La Sammana Management and BA Management.

Plaintiffs' second amended complaint asserted, among other claims, that Rosefielde was an "unfaithful servant." Plaintiffs alleged that Rosefielde was "unfaithful" to his employers, Kaye and the corporate plaintiffs, that he committed fraud against them, and that he willfully aided and abetted his employers' competitors. In support of that claim, plaintiffs enumerated several alleged acts of disloyalty committed by Rosefielde during his employment. Plaintiffs also asserted claims for breach of fiduciary duty, civil fraud, legal malpractice, and the unlicensed practice of law.[3]

---

[3] Although one count of the complaint set forth a cause of action identified as a claim for "theft," the facts alleged in that count appear to relate to plaintiffs' fraud claims.

9

In addition to seeking compensatory and punitive damages for the alleged disloyalty, plaintiffs sought rescission of the agreements that Rosefielde allegedly induced Kaye to sign, injunctive relief, and "[d]isgorgement and return of all payments, profits, disbursements and other funds received by any defendant pursuant to [the allegedly fraudulent] documents or pursuant to [Rosefielde's alleged] conduct" as set forth in the complaint. Rosefielde and his co-defendants denied all allegations and asserted counterclaims against the plaintiffs.

The case was tried before a judge sitting without a jury over twenty-six trial days, and was decided by the trial court in an oral determination supplemented by a written opinion. In a ruling that is unchallenged in this appeal, the trial court held, in part, that Rosefielde engaged in egregious conduct constituting a breach of his duty to Kaye and his companies and that he was an unfaithful servant.[4] The court cited, as examples of Rosefielde's misconduct in breach of his duty of loyalty, Rosefielde's "self-dealing" with respect to La Sammana Management and La Sammana Ventures, his "fraudulent acquisition"

_____

[4] The trial court also found that Rosefielde committed legal malpractice and fraud. On those claims, it awarded compensatory damages in the amount of $4000, the amount charged by Rosefielde for his Las Vegas trip, awarded more than $800,000 in counsel fees and costs to plaintiffs, and ordered rescission of Rosefielde's interests in La Sammana Ventures, La Sammana Management, and BA Management. It dismissed all counts of the counterclaim filed by Rosefielde and the other defendants.

10

of an ownership interest in BA Management, his inappropriate conduct toward female employees, his request for corporate reimbursement of the expenses incurred on his trip to Las Vegas, his "solicitation of two employees" to forge quitclaim deeds, his conspiracy to forge those deeds, his retaliation against an employee who refused to forge quitclaim deeds, his fraudulent application to a health insurer on behalf of the sales representatives, and his conduct of the unlicensed practice of law.

Although the trial court commented that "[i]t is difficult to imagine the commission by a corporate officer of more egregious conduct," it declined to grant the remedy of disgorgement demanded by plaintiffs. The court noted that there was no evidence that Rosefielde's breach of his fiduciary obligations to his employer resulted in actual damage to any of the plaintiff entities. It interpreted this Court's decision in Cameco, supra, 157 N.J. at 518-19, to hold that in order to compel disgorgement of a disloyal employee's compensation, a court must first find that "the employee's breach proximately caused the requested damages."

Rosefielde appealed the trial court's rulings in plaintiffs' favor. Plaintiffs cross-appealed, arguing that the trial court's decision not to order the remedy of disgorgement constituted error.

11

The Appellate Division affirmed in part, and reversed in part, the trial court's determination. Kaye, supra, 432 N.J. Super. at 494-95. The panel found that the trial court's findings were sufficiently supported by the evidence presented at trial and affirmed the trial court's judgment in plaintiffs' favor on their legal malpractice, civil fraud, and breach of fiduciary duty claims. Id. at 476-82. The panel reversed the trial court's award of legal fees on plaintiffs' malpractice claim, finding the award to be disproportionate to the compensatory damage award in the amount of $4000, and remanded to the trial court for a recalculation of those fees. Id. at 485-87. Again citing the modest award of compensatory damages, the Appellate Division panel reversed the trial court's award of punitive damages and remanded the issue for reconsideration. Id. at 488-92.

The panel, however, affirmed the trial court's determination that plaintiffs were not entitled to the remedy of disgorgement. Id. at 434. The panel commented only that the trial court's findings of fact were grounded in the record and that its legal analysis was "unassailable." Ibid.

We granted plaintiffs' petition for certification, limited to the question of whether a court may award the remedy of disgorgement of a disloyal employee's salary to an employer that has sustained no economic damage. 217 N.J. 586 (2014).

12

Plaintiffs assert that this Court's decision in Cameco, supra, 157 N.J. at 518-19, allows for the remedy of disgorgement without proof of economic loss. They argue that Cameco permits a trial court to order disgorgement of an employee's compensation during periods in which the employee was disloyal, if the record disclosed a basis for that remedy. Plaintiffs assert that their argument is also supported by the Appellate Division's decision in Simulation Systems Technologies, Inc. v. Oldham, 269 N.J. Super. 107, 111-12 (App. Div. 1993). Plaintiffs further contend that if disgorgement is unavailable as a remedy for an employee's breach of his or her duty of loyalty to an employer that does not incur damages, the employer's claim would be rendered meaningless.

Defendants counter that the Appellate Division properly affirmed the trial court's exercise of its discretion, as a court of equity, in denying disgorgement. They emphasize the language in Cameco stating that disgorgement "may be ordered" in addition to "traditional damages," reasoning that the language does not require the disgorgement remedy be awarded. Defendants further assert that Joseph Toker, Inc. v. Cohen, 67 N.J. Super. 68, 81-82 (App. Div. 1961), in which the Appellate Division declined to order repayment of monthly advances to an unfaithful

employee, controls and does not permit disgorgement in the setting of this case.

### III.

Whether equitable disgorgement is permitted without proof of actual damages is a question of law.  "When deciding a purely legal issue, review is de novo."  Fair Share Hous. Ctr., Inc. v. N.J. State League of Municipalities, 207 N.J. 489, 493-94 n.1 (2011) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).  Accordingly, "we owe no deference to the legal conclusions reached by the trial court and Appellate Division."  Borough of Harvey Cedars v. Karan, 214 N.J. 384, 401 (2013) (citing Manalapan Realty, supra, 140 N.J. at 378).

Plaintiffs here seek equitable disgorgement as a remedy for their claim for breach of the duty of loyalty.  As this Court has observed, "[l]oyalty from an employee to an employer consists of certain very basic and common sense obligations.  An employee must not while employed act contrary to the employer's interest."  Lamorte Burns & Co. v. Walters, 167 N.J. 285, 302 (2001) (citing Chernow v. Reyes, 239 N.J. Super. 201, 204 (App. Div.), certif. denied, 122 N.J. 184 (1990)); see also AYR Composition, Inc. v. Rosenberg, 261 N.J. Super. 495, 503-05 (App. Div. 1993) (noting that corporate officers and directors owe duty of loyalty); Auxton Computer Enters., Inc. v. Parker,

14

174 N.J. Super. 418, 425 (App. Div. 1980) (recognizing that employee owes duty of loyalty to employer); Restatement (Third) of Agency § 8.01 (2005) (Restatement (Third)) (providing that "[a]n agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship"); Restatement (Second) of Agency § 387 (1958) (Restatement (Second)) (same).

The Court's most detailed analysis of the duty of loyalty was set forth in its opinion in Cameco. There, the trial court dismissed the employer's claim against its employee, a food product transportation manager, who formed a company that served two of the employer's competitors. Cameco, supra, 157 N.J. at 509-10. The trial court found that the employee's business consumed no more than fifteen minutes of the employee's time per workday, that it did not interfere with the employee's performance of his responsibilities, that the employee did not breach his duty of loyalty, and that the employer suffered no damage. Id. at 512-13. The Appellate Division reversed the trial court's determination that the employee had not breached his duty of loyalty and remanded for a new trial on that issue, but otherwise affirmed the trial court's judgment. Id. at 514.

The Court in Cameco recognized that a breach of the duty of loyalty claim requires a fact-specific analysis. Id. at 516 (citing Auxton Computer Enters., supra, 174 N.J. Super. at 424).

15

"The contexts giving rise to claims of employee disloyalty are so varied that they preclude the mechanical application of abstract rules of law." Ibid. Invoking principles set forth in the Restatement (Second), the Court explained:

> The scope of the duty of loyalty that an employee owes to an employer may vary with the nature of their relationship. Employees occupying a position of trust and confidence, for example, owe a higher duty than those performing low-level tasks. Assisting an employer's competitor can constitute a breach of the employee's duty of loyalty. [Restatement (Second), supra,] § 394 comment a. Similarly, an employee's self-dealing may breach that duty. Id. §§ 387, 393.
>
> [Ibid.]

To guide trial courts, the Court identified four factors relevant to the determination of whether an employee-agent breached his or her duty of loyalty: 1) the "existence of contractual provisions" relevant to the employee's actions; 2) the employer's knowledge of, or agreement to, the employee's actions; 3) the "status of the employee and his or her relationship to the employer," e.g., corporate officer or director versus production line worker; and 4) the "nature of the employee's [conduct] and its effect on the employer." Id. at 521-22; see also Lamorte, supra, 167 N.J. at 303 (noting factors). Thus, a trial court considers the parties' expectations of the services that the employee will perform in return for his or her compensation, as well as the

16

"egregiousness" of the misconduct that leads to the claim. Cameco, supra, 157 N.J. at 521-22.

Just as the trial court's determination of the disloyalty claim mandates a fact-sensitive inquiry, so does its fashioning of a remedy. "Depending on the facts of the case, an employee's breach of the duty of loyalty can give rise to either equitable or legal relief." Cameco, supra, 157 N.J. at 518 (citing United Bd. & Carton Corp. v. Britting, 63 N.J. Super. 517 (Ch. Div. 1959), aff'd, 61 N.J. Super. 340 (App. Div.), certif. denied, 33 N.J. 326 (1960)); see also Restatement (Third), supra, § 8.01 comment d(1) (explaining that breach can give rise to legal and equitable remedies).

As a general rule, courts exercising their equitable powers are charged with formulating fair and practical remedies appropriate to the specific dispute. Rutgers Cas. Ins. Co. v. LaCroix, 194 N.J. 515, 529 (2008) ("'In doing equity, [a] court has the power to adapt equitable remedies to the particular circumstances of each particular case.'" (quoting Mitchell v. Oksienik, 380 N.J. Super. 119, 130-31 (App. Div. 2005))); see also US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 476 (2012) ("'In fashioning relief, the Chancery judge has broad discretionary power to adapt equitable remedies to the particular circumstances of a given case.'" (quoting Marioni v. Roxy Garments Delivery Co., Inc., 417 N.J. Super. 269, 275 (App.

Div. 2010)).  "While equitable discretion is not governed by fixed principles and definite rules, '[i]mplicit [in the exercise of equitable discretion] is conscientious judgment directed by law and reason and looking to a just result.'"  In re Estate of Hope, 390 N.J. Super. 533, 541 (App. Div.) (quoting State v. Madan, 366 N.J. Super. 98, 109-10 (App. Div. 2004)), certif. denied, 191 N.J. 316 (2007); see also Marioni, supra, 417 N.J. Super. at 275 (noting "Chancery judge is required to apply accepted legal and equitable principles").

In the array of equitable remedies available to the trial court, one option is the "disgorgement" of the disloyal employee's past compensation.[5]  Cameco, supra, 157 N.J. at 518-19; see also Cnty. of Essex v. First Union Nat'l Bank, 186 N.J. 46, 61 (2006) (noting in fiduciary duty context that "unjust enrichment/disgorgement is an equitable claim").  The principle that a court may order disgorgement of an employee's

---

[5] Some judicial opinions and the Restatement (Third) use the term "forfeiture" as an alternative to the term "disgorgement"; the two terms are closely analogous.  See, e.g., Cameco, supra, 157 N.J. at 519-22; Restatement (Third) § 8.01 comment d(2); see also Charles A. Sullivan, Mastering the Faithless Servant?: Reconciling Employment Law, Contract Law, and Fiduciary Duty, 2011 Wis. L. Rev. 777, 794 (2011) (noting that "courts tend to speak of 'forfeiture' when compensation has not been paid and 'disgorgement' when the master seeks to recover what has been paid before the [servant's] faithlessness was discovered, but the principle is the same").

compensation for his or her breach of the duty of loyalty is set forth in the Restatement (Second):

> An agent is entitled to no compensation for conduct which is disobedient or which is a breach of his duty of loyalty; if such conduct constitutes a wilful and deliberate breach of his contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned.

> [Restatement (Second), supra, § 469.]

Although section 469 of the Restatement (Second) characterizes the principle of disgorgement as a "defense," the availability of that remedy "is not limited to its use as a defense to an agent's claim for compensation." Restatement (Third), supra, § 8.01 comment d(2). Disgorgement may be a remedy if a court finds in favor of a plaintiff on an affirmative claim. See Cameco, supra, 157 N.J. at 518-22.

Comment b on section 469 of the Restatement (Second) clarifies the close nexus between the rule stated in that section and contract law, and illuminates one rationale underlying that rule. It explains:

> A serious violation of a duty of loyalty or seriously disobedient conduct is a wilful and deliberate breach of the contract of service by the agent, and, in accordance with the rule stated in Section 456, the agent thereby loses his right to obtain compensation for prior services, compensation for which has not been apportioned.

19

[Restatement (Second), supra, § 469 comment b.]

Section 456 of the Restatement (Second), identified in comment b as a source of the rule set forth in section 469, addresses the extent to which a principal must pay a discharged agent for services properly rendered by that agent:

> If a principal properly discharges an agent for breach of contract, . . . the principal is subject to liability to pay to the agent, with a deduction for the loss caused the principal by the breach of contract:
>
> (a)  the agreed compensation for services properly rendered for which the compensation is apportioned in the contract, whether or not the agent's breach is wilful and deliberate[.]
>
> [Id. § 456.][6]

Thus, the equitable remedy of disgorgement is derived from a principle of contract law:  if the employee breaches the duty of loyalty at the heart of the employment relationship, he or she may be compelled to forego the compensation earned during the period of disloyalty.  The remedy is substantially rooted in the notion that compensation during a period in which the employee is disloyal is, in effect, unearned.

---

[6] Section 8.01 of the Restatement (Third) encompasses the rules set forth in Restatement (Second) sections 456 and 469.  See Restatement (Third), supra, § 8.01 Reporter's Notes comment a.

20

Guided by those principles, we consider the question presented by this appeal: whether a showing of economic loss by an employer is a prerequisite to granting the remedy of equitable disgorgement. That remedy has been discussed only rarely in our appellate decisions.

In Simulation Systems, supra, the Appellate Division reviewed a trial court's decision that awarded damages in favor of an employer whose employee formed a separate competing company, but that denied the remedy of disgorgement in the absence of proof as to how many working hours the employee spent on his personal venture. 269 N.J. Super. at 108-10. The trial court further stated its understanding that New Jersey law does not recognize disgorgement of compensation paid to a disloyal employee, and concluded that the proofs presented at trial were inadequate. Id. at 110. The Appellate Division declined to determine whether this Court would adopt sections 456 and 469 of the Restatement (Second) and generally recognize such a remedy. Id. at 112. The panel reasoned that the record lacked proof of the method by which the employee was compensated and affirmed the trial court's dismissal of the plaintiff's claim for disgorgement. Id. at 111-12.

In Cameco, supra, following its detailed analysis of the legal principles controlling whether an employee has breached his or her duty of loyalty, the Court briefly discussed

21

equitable disgorgement and clarified that the remedy is not contingent on a finding of damages. See 157 N.J. at 518-19, 522. The Court first identified legal remedies that might be available for a breach of the duty of loyalty -- profits earned from a competing enterprise while still employed and "compensation for a direct injury suffered by the employer as a result of the employee's breach," including the value of an employer's lost opportunity or the employee's "secret profit." Id. at 518 (citing Chernow, supra, 239 N.J. Super. at 205; United Bd. & Carton, supra, 63 N.J. Super. at 532-33). The Court then expressly noted the absence of any showing in Cameco that the employer had suffered money damages "proximately caused" by the employee's disloyalty. Ibid. Notwithstanding that finding, the Court observed that "in addition to more traditional damages, an employer may seek forfeiture of its employee's compensation," and suggested that "forfeiture" of part of the employee's salary might be appropriate in that case. Id. at 519, 522. Cameco clearly stands for the principle that disgorgement is available as a remedy, even when there is no finding of economic loss to the employer.

Moreover, in Cameco, supra, the Court cited with approval Restatement (Second) section 469. Id. at 520. That Restatement (Second) provision includes in its commentary the principle that a disloyal agent is not entitled to compensation, "even though

22

the conduct of the agent does not harm the principal." Restatement (Second), supra, § 469 comment a; accord Restatement (Third), supra, § 8.01 comment d(2) (stating that "[t]he better rule does not condition the availability of forfeiture as a remedy on whether a principal can establish damage"). Thus, the Court in Cameco clearly envisioned that in a case such as the one before it, in which no economic loss could be proven, disgorgement of the disloyal employee's salary would nonetheless be one alternative in the range of remedies available to the trial court.[7] To the extent that Joseph Toker, supra, 67 N.J. Super. at 81-82, on which defendants rely, can be read to conflict with this principle, its holding in that regard was implicitly abrogated by Cameco.

---

[7] Numerous federal and state decisions applying the law of our sister jurisdictions follow this principle. See, e.g., Huber v. Taylor, 469 F.3d 67, 77-78 (3d Cir. 2006) (applying Texas law); Phansalkar v. Andersen Weinroth & Co., 344 F.3d 184, 200 (2d Cir. 2003) (applying New York law); Bos. Children's Heart Found., Inc. v. Nadal-Ginard, 73 F.3d 429, 435, 436 n.7 (1st Cir. 1996) (applying Massachusetts law); Wilshire Oil Co. of Tex. v. Riffe, 406 F.2d 1061, 1062-63 (10th Cir.) (applying Oklahoma law), cert. denied, 396 U.S. 843, 90 S. Ct. 105, 24 L. Ed. 2d 92 (1969); J.C. Peacock, Inc. v. Hasko, 16 Cal. Rptr. 518, 358 (Ct. App. 1961); Ross v. Calamia, 13 So. 2d 916, 917 (Fla. 1943); ABC Trans Nat'l Transp., Inc. v. Aeronautics Forwarders, Inc., 413 N.E.2d 1299, 1314-15 (Ill. App. Ct. 1980); Wenzel v. Hopper & Galliher, P.C., 830 N.E.2d 996, 1000-01 (Ind. Ct. App. 2005); Chelsea Indus., Inc. v. Gaffney, 449 N.E.2d 320, 327 (Mass. 1983); Feiger v. Iral Jewelry, Ltd., 363 N.E.2d 350, 351 (N.Y. 1977); Efird v. Clinic of Plastic & Reconstructive Surgery, P.A., 147 S.W.3d 208, 220 (Tenn. Ct. App. 2003); Burrow v. Arce, 997 S.W.2d 229, 240 (Tex. 1999); Faultersack v. Clintonville Sales Corp., 34 N.W.2d 682, 683-84 (Wis. 1948).

23

In a different setting -- a county government's claim for the disgorgement of fees earned by a bank that obtained its position as a bond underwriter through bribery -- this Court reaffirmed that equitable disgorgement is not contingent on a showing of economic loss. First Union, supra, 186 N.J. at 49, 59. There, although the county acknowledged that it did not suffer damages on certain bond transactions, the Court explained that "unjust enrichment/disgorgement is an equitable claim . . . grounded in the theory that a wrongdoer should not profit from its wrongdoing regardless of whether the innocent party suffered any damages." Id. at 61. That basic principle is not limited to the bond underwriting fee context addressed by the Court in First Union. Nothing in that case suggests that its holding as to disgorgement would not apply with equal force to a disloyal employee.

The disgorgement remedy is consonant with the purpose of a breach of the duty of loyalty claim: to secure the loyalty that the employer is entitled to expect when he or she hires and compensates an employee. See Lamorte Burns, supra, 167 N.J. at 302; see also Burrow v. Arce, 997 S.W.2d 229, 237-38 (Tex. 1999) (explaining that agent "is not entitled to be paid when he has not provided the loyalty bargained for and promised"). When an employee abuses his or her position and breaches the duty of loyalty, he or she fails to meet the employer's expectation of

24

loyalty in the performance of the job duties for which he or she is paid. Moreover, disgorgement "may also have a valuable deterrent effect because its availability signals agents that some adverse consequences will follow a breach of fiduciary duty." Restatement (Third), supra, § 8.01 comment d(2); see also Burrow, supra, 997 S.W.2d at 237-38 (explaining role of disgorgement as deterrent to agent disloyalty). Requiring an employer to demonstrate that it has sustained economic loss "is inconsistent with a basic premise of remedies available for breach of fiduciary duty." Restatement (Third), supra, § 8.01 comment d(2); see also Burrow, supra, 997 S.W.2d at 238 (explaining that requiring principal to prove "damages would conflict with both justifications" for disgorgement).

Accordingly, we reaffirm the holding of Cameco that an employer may seek disgorgement of a disloyal employee's compensation as a remedy for the breach of the duty of loyalty, with or without a finding of economic loss. We adopt the view of disgorgement as a remedy for the breach of an employee's duty of loyalty stated by comment a to section 469 of the Restatement (Second) and comment d(2) to section 8.01 of the Restatement (Third).

Because the trial court rejected the remedy of disgorgement on the improper premise that Cameco required a finding of economic loss to the employer, it did not determine whether the

25

record in this case warrants that remedy under the controlling principles of law. Accordingly, this matter must be remanded for that determination. In this and other matters in which the trial court finds a breach of the duty of loyalty, the trial court should consider the following factors when considering whether disgorgement is an appropriate remedy: the employee's degree of responsibility and level of compensation, the number of acts of disloyalty, the extent to which those acts placed the employer's business in jeopardy, and the degree of planning to undermine the employer that is undertaken by the employee. In a particular case, other factors may guide the court in the exercise of its discretion to impose an equitable remedy. See Cameco, supra, 157 N.J. at 521-22 (listing potentially relevant factors). The trial court should state its reasons for granting or denying disgorgement.

In imposing the remedy of disgorgement, depending on the circumstances, a trial court should apportion the employee's compensation, rather than ordering a wholesale disgorgement that may be disproportionate to the misconduct at issue. As the Court noted in Cameco, when read together, sections 456 and 469 of the Restatement (Second) provide that "an employer may recover compensation paid to a periodically paid employee for any periods during which the employee committed acts of disloyalty." Cameco, supra, 157 N.J. at 520 (citing Simulation

Sys., supra, 269 N.J. Super. at 111-12); accord Jet Courier

Serv., Inc. v. Mulei, 771 P.2d 486, 500 (Colo. 1989) (en banc)

(relying on Restatement (Second) sections and holding employee

paid monthly is disentitled to compensation only for pay periods

in which he was disloyal).  Relying on the commentary to

Restatement (Second) section 456, the Appellate Division

explained "apportioned services" as follows:

> "If an agent is paid a salary apportioned to
> periods of time, or compensation apportioned
> to the completion of specified items of work,
> he is entitled to receive the stipulated
> compensation for periods or items properly
> completed before his renunciation or
> discharge.  This is true even if, because of
> unfaithfulness or insubordination, the agent
> forfeits his compensation for subsequent
> periods or items."
>
> [Simulation Sys., supra, 269 N.J. Super. at
> 111 (quoting Restatement (Second), supra, §
> 456 comment b).]

In Simulation Systems, the Appellate Division explained

that the record did not show how often the employee was paid,

and was "totally devoid of evidence which pinpoint[ed] the pay

period in which each disloyal act was committed and of evidence

that show[ed] the amount of compensation apportioned to that

period."  Id. at 111-12.  Here, in contrast to Simulation

Systems, the trial court's thorough factual findings provide

substantial information about the timing of Rosefielde's

disloyal acts and the frequency and amount of his compensation.

27

Rosefielde, through his company Plumrose, was paid his $500,000 annual salary on a monthly basis, in equal shares by Flagship and Atlantic Palace. Thus, if the trial court decides on remand that plaintiffs are entitled to disgorgement, it should apportion Rosefielde's compensation, ordering disgorgement only for monthly pay periods in which he committed acts of disloyalty.[8]

IV.

The judgment of the Appellate Division is reversed with respect to the remedy of equitable disgorgement, and the matter is remanded to the trial court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE FERNANDEZ-VINA did not participate.

---

[8] If a court finds that an employee has been disloyal during all pay periods, it may order disgorgement of all of the employee's salary.

SUPREME COURT OF NEW JERSEY

NO. ___A-93___                          SEPTEMBER TERM 2013

ON CERTIFICATION TO _____Appellate Division, Superior Court_____

BRUCE KAYE, Individually and as TRUSTEE OF THE BRUCE
KAYE REVOCABLE TRUST and the BRUCE KAYE DYNASTY TRUST,
JASON KAYE, FLAGSHIP RESORT DEVELOPMENT CORPORATION,
FIRST RESORTS MANAGEMENT COMPANY, INC., ATLANTIC PALACE
DEVELOPMENT, LLC, and LA SAMMANA VENTURES, LLC,

      Plaintiffs-Appellants,

          v.

ALAN P. ROSEFIELDE, PLUMROSE COMPANY, INC., and
ROSE ASSOCIATES, INC. OF MIAMI,

      Defendants-Respondents,

          and

LA SAMMANA MANAGEMENT, LLC, and BA MANAGEMENT, LLC,

      Defendants,

          v.

DEBORAH KAYE, 2000 BRUCE KAYE DYNASTY TRUST,
HOWARD ALTER, SUSAN TUNNEY, MICHAEL VALENTI, RONNIE
STRANSKY, KENNETH WOLFE, and DENNIS RICHARD,

      Third-Party Defendants.

DECIDED _____September 22, 2015_____

_____Chief Justice Rabner_____ PRESIDING

OPINION BY _____Justice Patterson_____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | REVERSE AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | -------------------- | -------------------- |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |