**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0690-21

BRUCE KAYE, individually and as
trustee of THE BRUCE KAYE
REVOCABLE TRUST and THE
BRUCE KAYE DYNASTY TRUST,
JASON KAYE, FLAGSHIP RESORT
DEVELOPMENT CORPORATION,
FIRST RESORTS MANAGEMENT
COMPANY, INC., ATLANTIC
PALACE DEVELOPMENT, LLC, and
LA SAMMANA VENTURES, LLC,

     Plaintiffs-Respondents,

v.

ALAN P. ROSEFIELDE, PLUMROSE
COMPANY, INC., ROSE
ASSOCIATES, INC. OF MIAMI,
LA SAMMANA MANAGEMENT,
LLC, and BA MANAGEMENT, LLC,

     Defendants/Third-Party
     Plaintiffs-Appellants,

v.

DEBORAH KAYE, 2000 BRUCE
KAYE DYNASTY TRUST,
HOWARD ALTER, SUSAN

TUNNEY, MICHAEL VALENTI,
RONNIE STRANSKY, KENNETH
WOLFE, and DENNIS RICHARD,

     Third-Party Defendants.
_____

Argued November 28, 2023 – Decided January 29, 2024

Before Judges Whipple, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Atlantic County, C-000017-05.

Andrew W. Rubin argued the cause for appellants.

Jordan L. Barbone argued the cause for respondents (Jacobs & Barbone, PA, attorneys; Jordan L. Barbone, on the brief).

PER CURIAM

The case returns to us for the third time, after having been remanded to the trial court, by this court and the Supreme Court, for further consideration of certain issues. We affirm the September 23, 2023 judgment in its entirety.

This litigation commenced in 2005. The facts of this case were well-chronicled in our prior opinions, Kaye v. Rosefielde (Kaye I), 432 N.J. Super. 421, 435-59 (App. Div. 2013), and Kaye v. Rosefielde (Kaye III), No. A-149-17 (App. Div. Oct. 7, 2019), and in the Supreme Court's opinion in Kaye v. Rosefielde (Kaye II), 223 N.J. 218, 222-27 (2015), and need not be fully

repeated to understand the orders currently under review. The case stems from a failed business relationship between plaintiff Bruce Kaye and defendant Alan Rosefielde and their affiliated entities. Kaye employed Rosefielde for a period of two years, between January 2003 and January 2005, paying him $500,000 per year to run three timeshare businesses in Atlantic City and Brigantine, New Jersey, that Kaye principally owned or controlled. Kaye alleged that during those two years, Rosefielde "was an unfaithful servant who plundered his companies, caused his companies to suffer considerable losses as the result of his nonfeasance and misfeasance, and fraudulently acquired ownership and income interest in three of the companies."

The case was tried before the court over several months in 2007. On July 9, 2007, the court issued an oral ruling from the bench. On November 1, 2007, the court entered a final judgment and issued a written post-trial opinion, as well as a separate opinion on counsel fees and punitive damages. The court largely found in favor of plaintiffs on their causes of action.

The court awarded equitable remedies that rescinded transactions through which Rosefielde had acquired financial interests in the plaintiff entities, awarded plaintiffs' requests for counsel fees and costs on the legal malpractice and fraud claims in the amount of $803,189.99, awarded $250,000 punitive

3

damages on the fraud claims, and awarded $4,000 in compensatory damages. However, the court denied plaintiffs' request for disgorgement on the unfaithful servant claim because it believed, as a legal matter, that it could not award disgorgement in the absence of a quantifiable loss; otherwise, the court would have required disgorgement. The court awarded defendants $86,514.23 in counsel fees and costs. Ultimately, net of the award to defendants, the court awarded $966,675.76 to plaintiffs.

Both parties appealed. In November 2012, before we issued our first opinion, the parties entered into a settlement agreement but did not notify the court about the settlement. The settlement agreement referenced the then pending appeal from the trial court's award of $966,675.76 plus interest to plaintiffs by its docket number (A-1120-07) and labeled it the "New Jersey Action." The settlement agreement also referenced actions in Florida and New York, wherein plaintiffs were seeking enforcement and recovery on the judgment, as well as an additional litigation and an arbitration in Florida.

The parties expressed their desire to "resolve all disputes among the parties, finally dismiss the Actions with prejudice, and release each other from potential claims, known or unknown, including those raised or that could have been raised in the Actions, except as expressly provided in this Agreement."

In August 2013, not having been advised of the settlement, we issued a written opinion. Kaye I, 432 N.J. Super. 421 (App. Div. 2013).

We affirmed the equitable relief of rescission awarded to plaintiffs, by which the trial court rescinded Rosefielde's ownership interests in La Sammana, La Sammana Management, and BA Management; we also affirmed the award of compensatory damages on these rescinded transactions. Id. at 433, 494-95. We also affirmed the findings that Rosefielde committed legal malpractice and civil fraud. Id. at 433, 495. We vacated the award of counsel fees to plaintiffs based upon those claims, however, because plaintiffs "were unable to prove that Rosefielde's legal malpractice and fraudulent conduct proximately caused any compensable damages to them." Id. at 434; see also id. at 495. The court remanded "for the trial court to reconsider and, if necessary, recalculate the amount of counsel fees, if any, that plaintiffs are entitled to receive under the circumstances presented." Ibid.

We vacated an award of punitive damages and remanded for reconsideration of whether the award of punitive damages was "sustainable based only on the compensatory damages correctly awarded for Rosefielde's improper use of corporate funds to pay for his personal trip to Las Vegas." Ibid.

A-0690-21

Finally, on plaintiffs' cross-appeal, we affirmed the trial court's denial of the remedies of disgorgement and forfeiture. Id. at 434, 494-95.

Plaintiffs filed a petition for certification, and defendants moved to dismiss the petition based upon the settlement. By order dated March 11, 2014, the Supreme Court denied the motion without explanation, but the Court granted the petition, in May 2014, limited to the issue of whether we erred by affirming the trial court's holding that economic damage is a necessary prerequisite for disgorgement of the employee's salary.

Meanwhile, in 2013, Rosefielde had filed an action in Florida to enforce the settlement agreement and obtain payments pursuant to the agreement, arguing that he had prevailed in the New Jersey appellate proceedings. In response, in March 2014, Kaye moved for summary judgment, arguing that Rosefielde's claims were premature because the New Jersey proceedings were not yet concluded. The court granted Kaye's motion, agreeing with his interpretation of the settlement agreement: that it required the conclusion of all proceedings in the "New Jersey Action" in order to determine whether payments might be due under the settlement agreement.

In September 2015, the Supreme Court issued its opinion on the merits, without mentioning the settlement. Kaye II, 223 N.J. 218 (2015). The Court

6

reversed this court, in part, ruling that the trial court could order equitable disgorgement as a remedy, even though plaintiffs had not sustained economic loss as a consequence of Rosefielde's breach of his duty of loyalty. Id. at 221-22, 236-37. The Court "remand[ed] to the trial court to determine whether the remedy of disgorgement should be imposed in this case." Id. at 222.

On remand to the Chancery Division, Rosefielde moved to enforce the settlement and dismiss the case as moot. By opinion and order dated August 9, 2017, the court granted the motion, finding that plaintiffs had released the right to pursue or obtain any further recovery from defendants in the New Jersey litigation, including disgorgement.

Plaintiffs appealed, after which we temporarily remanded to the trial court to address defendants' motion for indemnification of all legal fees incurred since the settlement agreement was signed. By opinion and order dated March 29, 2018, the Chancery Division ruled defendants were entitled to indemnification, but only for the fees incurred in litigating the motion to dismiss made after the Supreme Court remand, which amounted to $32,445.

Once again, the matter returned to this court and, by opinion dated October 7, 2019, we concluded we were "constrained to reverse both orders and remand for proceedings consistent with" the Supreme Court's ruling, that is, for a

7

determination as to whether plaintiffs should receive disgorgement of Rosefielde's compensation, because "[n]otwithstanding the argument that the settlement agreement foreclosed further litigation," in issuing its opinion, the Supreme Court had not specified "whether it considered the case a live controversy or whether it was deciding the case under the public interest exception to the mootness doctrine." Kaye III, slip op. at 9.

On November 5, 2019, Rosefielde filed a petition for certification, which the Supreme Court denied. That tortured procedural saga leads us to the present appeal of the latest remand to the Chancery Division.

In July 2020, defendants moved to amend their answer to plead additional affirmative defenses premised on the settlement agreement, including accord and satisfaction, and a counterclaim seeking specific performance of the settlement agreement. The Chancery Division denied the motion on October 14, 2020.

The court conducted a hearing over four days in March and April 2021, and considered the parties' extensive written submissions, in which they drew the court's attention to portions of the trial court's evidentiary record and rulings and argued the legal issues.

The court issued its decision on May 28, 2021, applying the factors specified by the Supreme Court, and concluded that disgorgement was an appropriate remedy for Rosefielde's disloyalty. The court considered: Rosefielde's degree of responsibility and level of compensation; the degree to which Kaye relied upon Rosefielde for both legal and management matters; the number of acts of disloyalty and the extent of Rosefielde's schemes; the extent to which Rosefielde's acts exposed Kaye and his businesses to potential civil and criminal liability; and Rosefielde's careful planning of his complex schemes. The court also gave significant weight to the trial judge's statement that he would have awarded disgorgement damages if he felt he could lawfully do so, and the trial court's finding that Rosefielde's misconduct occurred through his entire tenure.

Pertinent to the present appeal, the court expressly accepted plaintiffs' timeline of Rosefielde's disloyalty, stating: "Attached as Exhibit B to plaintiff[s'] submissions is a timeline of Rosefielde's disloyal schemes which the [c]ourt accepts as fact." The court also detailed the timing of Rosefielde's acts of disloyalty, with the various instances of misconduct extending from January 2003 to December 2004. And the court expressly rejected defendants' "attempts to isolate" specific pay periods when the disloyalty occurred, stating: "This

9

[c]ourt finds that Mr. Rosefielde entered his relationship with the intentional scheme to pilfer from Mr. Kaye and his holdings. It is not reasonable or equitable to attempt to isolate these incidents as requested by the [d]efendant." The court expressly found that Rosefielde's disloyalty "lasted the entire two[-] year duration of his employ," which is what the trial judge previously found.

The court also rejected Rosefielde's argument that disgorgement was inappropriate because he was not an employee of the corporate entities. As to this issue, the court noted: the trial judge's finding that Rosefielde had been an "unfaithful servant"—which was unchallenged on appeal—and the Supreme Court's finding that Rosefielde was an employee and not an independent contractor.

Finally, the court rejected Rosefielde's argument that any disgorgement must be exclusively from Plumrose Company, Inc. and Rose Associates of Miami because "no payments were made to Alan Rosefielde." As to this issue, the court noted the plain language of the order entered by the trial judge, pursuant to which judgment was granted in favor of plaintiffs and against all defendants, including Rosefielde individually.

Thus, as a remedy for Rosefielde's being an unfaithful servant, breaching his fiduciary responsibilities, and committing fraud, the court awarded plaintiffs

A-0690-21

$1,000,000 in disgorgement damages, which amounted to the entirety of Rosefielde's compensation during his two years of employment.

Turning to the question of punitive damages, the court first noted that we had reversed the trial court's award of $250,000 in punitive damages and remanded for reconsideration "based upon the proportionality of the modest $4,000 compensatory damage award" (for a Las Vegas trip). We also had commented, however, that disgorgement of Rosefielde's salary could form a basis for punitive damages, while noting that disgorgement was unavailable as a legal matter.

Reconsidering the question of punitive damages under these directives, and under the Punitive Damages Act, N.J.S.A. 2A:15-5.9, the court found by clear and convincing evidence that plaintiffs were entitled to punitive damages with respect to: Rosefielde's fraudulent acquisition of an ownership interest in BA Management—actuated by actual malice or wanton and willful disregarding of Kaye's interests—and Rosefielde's use of corporate funds to pay for a personal trip to Las Vegas, which constituted theft and was done with willful and wanton disregard for his corporate fiduciary obligation and the harm that would occur to the corporation.

11

Considering the statutory factors and the evidentiary record, and in light of the $1 million disgorgement award and the substantial counsel fee award, the court found the appropriate amount of punitive damages was $350,000, which represented an upward adjustment of $100,000 from the original award of $250,000.

Regarding counsel fees, the court considered our holding that the counsel fee award was disproportionate to the $4,000 compensatory damage award and instructions on remand. The court found our rationale regarding the trial judge's methodology no longer applicable—because the Supreme Court had determined plaintiff had a valid claim for disgorgement damages—and awarded $1 million in disgorgement damages. The court also found evidence in the record to value the businesses as to which the trial judge had ordered rescission.

Accordingly, the court reinstated the original counsel fee award to plaintiffs ($716,675.76) and held that plaintiffs were entitled to additional counsel fees to be determined in subsequent motion practice.

Finally, the court rejected defendants' equitable arguments, holding in particular that: it could not consider the effect of the parties' settlement agreement or whether there had been an accord and satisfaction, given the limited scope of the prior remands; and "once the proportionality of the

12

compensatory award shifted significantly, this [c]ourt had the right to adjust upward the punitive award and grant counsel fees." And the court vacated the indemnification fee award to Rosefielde of $32,445, concluding "that defendant Rosefielde is not entitled to indemnification of counsel fees as the result of his previously successful motion that was reversed by the Appellate Division."

After issuing this opinion, the court considered additional submissions relating to plaintiffs' application for counsel fees and costs and held a hearing on the application on August 19, 2021. On September 23, 2021, the court awarded $289,628.06 in counsel fees to plaintiffs, in addition to the previous award of $716,675.76. On November 19, 2021, the court issued a corrected judgment in order to correct a mathematical error.

This appeal followed.

Defendants contend the remand court erred in denying their motion for leave to amend their answer to assert affirmative defenses based upon the settlement agreement and to assert a counterclaim to enforce the settlement agreement. They argue: the proposed amendment was not prohibited by the remand orders and was permitted under Rule 4:9-1; the entire controversy doctrine required the court to grant the motion both as to the proposed affirmative defenses and the proposed counterclaim; New Jersey's strong public

policy favoring the enforcement of settlements required the court to permit the amendment; and plaintiffs were estopped from objecting to the amendment. Alternatively, defendants contend the remand court erred by not dismissing the case after finding disgorgement because, under the settlement agreement, plaintiffs had waived any right to receive further payments from defendants. We find no merit to these arguments. Based on our review, we conclude the court did not abuse its discretion in denying the motion for leave to amend because the proposed amendments were barred by the remand orders.

The Supreme Court's remand to the trial court was expressly limited "to determine whether the remedy of disgorgement should be imposed in this case." Kaye II, 223 N.J. at 222. Our first remand to the trial court was limited to: (1) "reconsider and, if necessary, recalculate the amount of counsel fees, if any, that plaintiffs are entitled to receive consistent with this opinion"; and (2) "reconsider whether an award of punitive damages is sustainable consistent with this opinion." Kaye I, 432 N.J. Super. at 495. And in Kaye III, we reversed an order dismissing the case based upon the settlement agreement (as well as an order for indemnification of Rosefielde for legal fees incurred on the motion to dismiss) and held that, notwithstanding the settlement, the remand court must consider the remand issues, consistent with the prior remand orders. Kaye III,

14

(slip op. at 9-10). Based on our review, we conclude the proposed amendments were barred by the remand orders.

We also reject the argument that a New Jersey court must resolve the parties' conflicting interpretations of the settlement agreement. In the settlement agreement, the parties acknowledged that they had litigated their disputes in multiple states, including New Jersey and Florida. The settlement agreement expressly anticipated that the piecemeal litigation would continue, that is: the New Jersey Action would proceed through the appellate process, and any disputes relating to the settlement agreement would be litigated in a Florida court, applying Florida law. Settlement agreements, like any contracts, are to be enforced as clearly written. Serico v. Rothberg, 234 N.J. 168, 178 (2018); Nolan v. Lee Ho, 120 N.J. 465, 472 (1990); Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983).

The terms of the settlement agreement appear to preclude plaintiffs from recovering on any post-settlement judgment entered in the New Jersey Action, stating: "Kaye and the Kaye Entities agree to accept . . . the Settlement Payment in full and complete satisfaction of the Judgment and warrant that they will not seek any further payment from Rosefielde and/or the Rosefielde Entities . . . ." (Emphasis added). The settlement agreement also includes a release of "claims,

liabilities, expenses, causes of action[,] and other proceedings whatsoever . . . ." As previously discussed, the settlement agreement permits continuation of the New Jersey Action, but only to determine whether plaintiffs must pay a claw-back amount to defendants.

Defendants argue "the remand court committed reversible error because it failed to follow the directions of the Supreme Court to determine whether disgorgement was justified for each pay period and further erred because it failed to apply the right standards to determine disloyalty." We disagree.

On remand, the trial court performed the analysis required by the Supreme Court and considered and applied each of the factors specified, concluding that disgorgement was an appropriate remedy for Rosefielde's disloyalty. Furthermore, the court: accepted the trial court's finding that Rosefielde's misconduct occurred through his entire tenure; accepted plaintiffs' timeline of Rosefielde's disloyalty; detailed the timing of Rosefielde's acts of disloyalty, with the various instances of misconduct extending from January 2003 to December 2004; and found that Rosefielde's disloyalty "lasted the entire two[-] year duration of his employ."

The remand court's findings are well-supported by the record, including the trial court's opinions, as well as by our opinion in <u>Kaye I</u> and the Supreme

16

Court's opinion in <u>Kaye II</u>, each of which detailed the extent of Rosefielde's misconduct and the timing of his misdeeds, which spanned the entirety of his two-year employment. Contrary to defendants' argument, there was no error in the remand court's finding that disgorgement was appropriate for the entire two years of Rosefielde's tenure.

We reject defendants' assertion the grant of additional punitive damages was beyond the scope of the remands and not supported by the evidence. On the post-trial appeal, we rejected most of defendants' arguments as to why the punitive damages award was unwarranted but remanded on their argument that "there is no factual support in the record for punitive damages." <u>Kaye I</u>, 432 N.J. Super. at 487-88. We agreed punitive damages were appropriate on counts three and five, but expressed concern that the punitive damages award was disproportionate to the actual damages plaintiffs suffered as a result of certain actions. <u>Id.</u> at 490-92; <u>see also</u> N.J.S.A. 2A:15-5.14. We anticipated a reduction of the punitive damages award on remand. However, our analysis was premised upon the disproportionately large punitive damage award in relation to the small compensatory damages awarded on counts three and five, with disgorgement damages not permitted.

That proportionality concern was substantially altered by the Supreme Court's reversal of our disgorgement ruling and the remand court's finding that a $1 million disgorgement award was appropriate, along with an increase in the award of counsel fees and costs. The substantial increase in the actual damages awarded permitted the remand court to order a proportionate increase in the punitive damage award.

For similar reasons, we reject defendants' contention the counsel fee award was beyond the scope of the remands and not adequately supported. The remand court found that, under this new set of circumstances, plaintiffs had obtained a substantial amount of compensable damages—thereby justifying the original fee award, as well as an additional award for the efforts on remand necessary to obtain the disgorgement. After considering the parties' submissions and arguments, the court reiterated its authority to make an additional award of fees and costs based upon the terms of the remands from the Appellate Division and the Supreme Court, and it awarded additional counsel fees and costs of $289,628.06 for the remand proceedings.

The remand court's reinstatement of the prior award of counsel fees and costs, as well as its award of additional fees and costs, were consistent with the remand instructions that the fee award be proportional to the actual damages.

A-0690-21

Tomaino v. Burman, 364 N.J. Super. 224, 232 (App. Div. 2003). Since the actual damages awarded increased on remand, the reasonable fee award also increased.

This record presents no basis for finding a clear abuse of discretion. "Because the trial court was in the best position to weigh the equities and arguments of the parties in this lengthy and contentious case," we will not disturb its award. Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 447 (2001). Plaintiffs achieved complete success in the remand proceedings, ultimately fending off defendants' motion to dismiss and obtaining full disgorgement of Rosefielde's $1,000,000 salary, as well as a $100,000 increase in punitive damages.

Any question of whether plaintiffs are entitled to recover the post-remand fee award is a matter to be resolved by a Florida court interpreting the parties' settlement agreement. Plaintiffs may not collect on the post-remand judgment unless otherwise ordered by a Florida court in its interpretation of the agreement, applying Florida law. Indeed, the Florida court has already ruled as such, finding that the New Jersey proceedings must be complete "in order to determine whether payments might be due under the settlement agreement."

A-0690-21

Any remaining arguments raised are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0690-21