**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3105-19

TOWNSHIP OF MAPLEWOOD
and BOARD OF HEALTH OF
THE TOWNSHIP OF
MAPLEWOOD,

     Plaintiffs-Respondents,

v.

TWC2168 LLC, DANIEL
FAINMAN, and TETIANA
BERRIORS,

     Defendants-Appellants.

_____

        Submitted February 22, 2021 – Decided April 27, 2021

        Before Judges Currier and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Chancery Division, Essex County, Docket No. C-000181-19.

        Joseph Rakofsky, attorney for appellants.

        Bendit Weinstock, PA, attorneys for respondents (Joseph H. Tringali, on the brief).

PER CURIAM

Defendants TWC2168, LLC (TWC), Daniel Fainman, and Tetiana Berriors appeal from the March 2, 2020 order of the Chancery Division permanently enjoining them from operating a massage business without a permit. We affirm.

I.

The following facts are derived from the record. The municipal code of plaintiff Township of Maplewood prohibits the operation of a massage business in the township without a permit issued by plaintiff Township of Maplewood Board of Health (Board).

In 2019, Fainman was the sole member of TWC, which operated an unpermitted massage business under the tradename TWC Healthclub (the Club) in a commercial building in Maplewood. On February 12, 2019, he applied to the Board on behalf of TWC for a permit to operate a massage business at its existing location. The Board denied the permit because of Fainman's criminal history and allegations of sex trafficking and prostitution at the Club.

A March 27, 2019 certificate of amendment for TWC named Berriors as the sole member of the entity. That same day, Berriors applied to the Board on

behalf of TWC seeking a permit to operate a massage business at the Club's existing location. She identified Fainman as the manager of the Club.

Robert D. Roe, the Health Officer for Maplewood, determined that the second application was incomplete. It appears that one element missing was a license from the New Jersey Board of Massage and Bodywork Therapy (State Board) for TWC to be a massage and bodywork employer. Berriors applied for the State license on April 3, 2019. According to Roe, in April 2019, Fainman withdrew the second application by taking it from Roe's desk during a meeting.

However, defendants produced a transcript of a May 16, 2019 telephone conversation between Roe and Berriors suggesting the second application was pending at that time. The transcript provides in relevant part:

> BERRIORS: I just want to let you know that [the] [S]tate [B]oard already approved the business, and I just want to find out if I can pick up [the] permit tomorrow.
>
> ROE: Yeah. Mr. Fainman was here. He gave me the number, and I'll call him just to confirm what you're saying, and if everything is good, I will issue the permit.
>
> BERRIORS: Okay. So tomorrow, I can come and pick [it] up, right?

ROE:  Yes.[1]

At the time of the conversation, the State Board had not issued a massage and bodyworker employer license to TWC.  The license was issued by the State Board to TWC more than two weeks later on May 31, 2019.

No further action was taken by Roe on the second application.  There is no evidence in the record that Berriors came to Roe's office on the day after the telephone call to pick up a permit.  Nor did defendants produce evidence that any further inquiry was made by Berriors, Fainman, or anyone else on behalf of TWC to determine if Roe had concluded that "everything is good" and issued the permit to operate a massage business.

In June 2019, Maplewood police received a tip that prostitution was taking place at the Club.  The next month, they received a report of an intoxicated woman in her undergarments walking in and out of the Club in the area of other commercial tenants.  Responding officers saw evidence of ongoing prostitution activities at the Club.  A July 10, 2019 police undercover operation at the Club resulted in Fainman's arrest for promoting prostitution.  A woman at the facility was also arrested and charged with prostitution.[2]

---

[1]  Although the transcript was not authenticated or formally admitted into evidence, plaintiffs have not contested its accuracy.
[2]  This appeal does not involve the criminal charges.

4

In August 2019, Maplewood police received a call from a citizen who was concerned that her cousin was being forced to engage in illegal activity at the Club. Officers could not locate anyone at the Club meeting the description given by the caller. Later that month, an investigator with the New Jersey Division of Consumer Affairs met with Roe and informed him that the agency was investigating TWC's alleged employment of unlicensed massage and cosmetology professionals at the Club.

On September 6, 2019, plaintiffs filed a verified complaint and order to show cause in the Chancery Division, alleging defendants were operating a massage business at the Club without a permit. Plaintiffs also alleged that defendants' conduct constituted a nuisance and public endangerment that threatened to harm the health, safety, and general welfare of persons who enter and patronize the Club. Plaintiffs sought immediate, temporary, and permanent restraints against defendants' continued violation of the municipal code.

On September 11, 2019, the Chancery Division entered an order to show cause temporarily restraining defendants from operating a massage business at the Club without a permit. On October 10, 2019, the trial court issued an oral opinion continuing the restraints against defendants and setting a discovery schedule. An October 24, 2019 order memorializes the court's decision.

5

Plaintiffs subsequently moved pursuant to <u>Rule</u> 1:10-3 to enforce litigant's rights. The motion was supported by a police report stating that on October 18, 2019, a plain clothes officer entered the Club and spoke with a TWC employee who informed him the facility was open and offering massages for $100.

On November 22, 2019, the trial court, although postponing a decision on plaintiffs' motion, entered an order continuing the restraints on defendants and authorizing Roe to post signs at the Club informing the public that TWC is prohibited from operating as a massage business.

On December 5, 2019, plaintiffs supplemented their motion to enforce litigant's rights. They submitted a police report stating that an undercover officer visited the Club on December 3, 2019, and was offered a massage by a TWC employee for a "donation" of $100. In addition, Roe certified that shortly after he posted signs at the Club as permitted by the court, he returned to the facility to discover the signs had been obscured by holiday decorations.

On December 23, 2019, the court entered an order continuing the prior restraints and directing defendants to lock the exterior doors of the Club to the public, thereby ceasing all business operations at the facility.

On January 14, 2020, the court issued an oral opinion addressing both plaintiffs' request for final restraints and their motion to enforce litigant's rights.

A-3105-19

The decision was based on the verified complaint, the exhibits attached thereto, and deposition transcripts. The court found that plaintiffs proved that they did not issue TWC a permit to operate a massage business. The court rejected defendants' argument that Roe orally granted a permit during the May 16, 2019 telephone conversation with Berriors. The court noted that during that call, Roe stated that he would issue a permit "if everything is good" after he confirmed that the State Board had issued a massage and bodywork employer license to TWC. The court found that defendants offered no proof that Roe confirmed the issuance of such a license and determined that issuance of a municipal permit to operate a massage business was warranted.

The court also found that notwithstanding the absence of a permit, defendants continued to operate a massage business at the Club. In addition, the court concluded defendants continued to operate that business in violation of several of its orders restraining that activity. Based on these findings, the court determined plaintiffs were entitled to permanent restraints against defendants' operation of a massage business at the Club without a permit.

Before entry of a written order, defendants moved for reconsideration. The court denied their motion in an oral opinion concluding they had merely reiterated the arguments presented at the final hearing and no grounds for

7

reconsideration existed.  In addition, the court rejected Fainman's argument that the verified complaint against him should have been dismissed because he is not a principal of TWC.

A March 2, 2020 order memorializes the court's decision.  The order: (1) permanently enjoins defendants from operating a massage business at the Club without a permit; (2) directs defendants to permanently lock the exterior doors of the Club to ensure it remains closed to the public for all unpermitted business; (3) permits Roe to post signs alerting the public to the fact that the Club is not permitted to provide massage services without a permit; and (4) prohibits defendants from removing or obscuring those signs.

This appeal follows.  Defendants argue the trial court: (1) abused its discretion by considering the police report detailing the undercover operation that resulted in a criminal charge against Fainman; (2) denied Fainman due process by adjudicating plaintiffs' claims before his criminal charges had been resolved; (3) erred by not dismissing Fainman as a defendant; (4) made an unsupported finding that Roe had not verbally issued a permit to TWC; (5) impermissibly limited discovery and the cross-examination of Roe (not raised below); (6) erroneously found permanent injunctive relief was warranted (not

raised below); and (7) failed to recognize plaintiffs' attorneys had a conflict of interest (not raised below).

## II.

"Our review of '[f]inal determinations made by the trial court sitting in a non-jury case . . . [is] limited and well-established.'" Balducci v. Cige, 456 N.J. Super. 219, 233 (App. Div. 2018) (alterations in original) (quoting Seidman v. Clifton Sav. Bank, 205 N.J. 150, 169 (2011)). The trial court's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "[W]e do not disturb the factual findings and legal conclusions of the trial [court] unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. (alterations in the original) (quoting In re Forfeiture of Pers. Weapons & Firearms Identification Card Belonging to F.M., 225 N.J. 487, 506 (2016)).

In addition, "[a]s a general rule, courts exercising their equitable powers are charged with formulating fair and practical remedies appropriate to the specific dispute." Kay v. Rosefielde, 223 N.J. 218, 231 (2015). "While equitable discretion is not governed by fixed principles and definite rules,

A-3105-19

'[i]mplicit [in the exercise of equitable discretion] is conscientious judgment directed by law and reason and looking to a just result.'" Ibid. (quoting In re Est. of Hope, 390 N.J. Super. 533, 541 (App. Div. 2007)) (alteration in original).

The standards for granting preliminary injunctive relief are well established: (1) whether a party would suffer irreparable harm if relief is not granted; (2) whether the claim rests on settled law and has a reasonable probability of success on the merits; and (3) whether the balance of hardships to parties demonstrates that greater harm would result from not issuing the stay than if it were issued. Garden State Equality v. Dow, 216 N.J. 314, 320 (2013) (citing Crowe v. De Gioia, 90 N.J. 126 (1982)). These factors also bear upon requests for permanent injunctive relief. See e.g., Murray v. Lawson, 136 N.J. 32, 50-51, cert. granted, judgment vacated on other grounds, 513 U.S. 802 (1994); Horizon Health Center v. Felicissimo, 135 N.J. 126, 139 (1994).

Having carefully considered defendants' arguments in light of the applicable legal standards, we affirm the March 2, 2020 order. The trial court's findings of fact are based on substantial credible evidence and its decision to grant permanent injunctive relief is supported by the record and legally sound.

Defendants' primary argument is that the trial court erred when it found plaintiffs had not issued TWC a permit to operate a massage business. They

base their argument on the premise that Roe orally issued the permit during the May 16, 2019 telephone call with Berriors. However, as the trial court correctly found, Roe told Berriors he intended to issue a permit to TWC if he confirmed that the State Board had issued TWC a massage and bodywork employer license and determined "everything is good." This is not a statement that Roe had issued TWC a massage permit. To the contrary, Roe stated that he intended to issue a permit if certain conditions were met. As the trial court found, the record contains no evidence that Roe confirmed issuance of the State Board license, determined that "everything is good," or issued TWC a permit. Notably, defendants produced no evidence that Berriors attempted to pick up a permit after the telephone call, as she suggested she would, or that anyone inquired on behalf of TWC about whether Roe had issued a permit.

We find no merit in Fainman's argument the trial court deprived him of due process by deciding plaintiffs' request for relief prior to resolution of the criminal charge pending against him. The trial court's decision is based solely on plaintiffs' allegation that TWC was operating a massage business without a municipal permit authorizing it to do so. The court did not consider plaintiffs' allegations that the Club posed a public nuisance because, among other things, it was the locus of acts of prostitution. Nor did the court make any findings

11

regarding the events at the Club on the night that an undercover police operation resulted in Fainman being arrested and charged with promoting prostitution. The charge against Fainman was not relevant to the issue decided by the court, was not the basis of any relief granted by the court, and was not explored at the final hearing.

We also are not persuaded by Fainman's argument the trial court should have dismissed the allegations against him because he is not a principal of TWC. Fainman first raised this argument in his motion for reconsideration. Prior to that time, Fainman was the only active participant in the proceedings among the defendants. On the day that the court considered plaintiffs' order to show cause, Fainman stated on the record that he was appearing on behalf of TWC and Berriors, to whom he had just spoken on the telephone. In addition, it is undisputed that Fainman, the recent prior owner of TWC, had been hired by Berriors as the manager of the Club. He offered no evidence suggesting that anyone other than he had control over the operation of what the court found to be an unpermitted massage business.

Finally, the record supports the trial court's award of permanent injunctive relief. The evidence establishes that defendants operated a massage business without a permit, an act that threatens the public safety and the health and

12

welfare of patrons of the Club. Defendants subsequently defied a series of trial court orders to cease operations of their unpermitted business. Although the court gradually increased the restraints on defendants, they continued their defiant behavior. The court's final order, which included the padlocking of the Club to protect the public safety and ensure compliance with the court's decision, was warranted.

To the extent we have not specifically addressed any of defendants' remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).[3]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Defendants raised several arguments for the first time on appeal. We do not consider questions not presented to the trial court "unless the questions . . . go to the jurisdiction of the trial court or concern matters of great public interest." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)). To the extent we do not address those arguments, we have determined that they do not satisfy the standards for appellate review.

13