**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0158-19

FEDERAL NATIONAL
MORTGAGE ASSOCIATION
(Fannie Mae), a corporation
organized and existing under
the laws of the United States
of America,

     Plaintiff-Appellant,

v.

MARTHA H. CLEAVES,
GRAHAM R. CLEAVES,
T.D. BANK NATIONAL
ASSOCIATION, STATE
OF NEW JERSEY, UNITED
STATES OF AMERICA,

     Defendants,

and

AC PROPERTY INVESTMENTS,
LLC,

     Respondent.

_____

Argued October 19, 2020 – Decided August 2, 2021

Before Judges Messano and Suter.

On appeal from the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. F-045874-13.

Richard P. Haber argued the cause for appellant (McCalla Raymer Leibert Pierce, LLC, attorneys; Richard P. Haber, on the briefs).

Rajeh A. Saadeh argued the cause for respondent (The Law Office of Rajeh A. Saadeh, LLC, attorneys; Rajeh A. Saadeh and Stilianos M. Cambilis, on the brief).

PER CURIAM

Plaintiff Federal National Mortgage Association appeals orders that released monies on deposit from a sheriff's sale. We reverse the December 7, 2017 and August 23, 2019 orders to the extent they are inconsistent with this opinion, and remand for a plenary hearing limited to how much of the deposit should have been paid to plaintiff.

I.

On November 18, 2016, a final judgment of foreclosure for $288,607.83 was entered in favor of plaintiff on a mortgaged property in Hillsborough. A Writ of Execution directed the Somerset County Sheriff to sell the property. The June 6, 2017 sheriff's sale had a starting bid of $100 and a stopping bid (upset price) of $297,000. Conditions of sale included that the property was to be sold

in "[s]uch a state of facts as an accurate survey and inspection would disclose" and "in its 'as is' condition."

Defendant AC Property Investments, LLC, was the successful bidder for $297,000. It tendered a $60,000 deposit to the sheriff, which was the minimum amount of twenty percent. On June 14, 2017, defendant advised plaintiff the property was structurally unsound because a load-bearing wall had been removed within the house, making it "extremely dangerous." Defendant would not proceed with the purchase; it wanted its deposit returned and the sale relisted. Plaintiff filed a motion in the Superior Court requesting forfeiture of the deposit and resale of the property. Defendant filed a cross-motion to vacate the sale and return its deposit.

The court vacated the sheriff's sale on September 15, 2017, after both parties agreed the property should be resold. It ordered the sheriff to retain the deposit. Relevant here, the court ordered the

> measure of damages shall be the deficiency between the bid at second sale and the bid at the first, plus the costs of the first sale, including Sheriff's costs for the first sale. Any remaining funds shall be returned to the third[-]party bidder who failed to close.

Plaintiff appealed the September 15, 2017 order.

A-0158-19

As that appeal was pending, a second sheriff's sale was conducted on October 31, 2017. Plaintiff increased the upset price to $321,000, there were no bidders and plaintiff took back the property by paying $1000.

Defendant requested a stay of the September 15, 2017 order. Under the damages formula set forth in the order, the difference between the first bid of $297,000 and plaintiff's payment of $1000 would forfeit the entire deposit to plaintiff. Plaintiff filed a cross-motion to enforce the order and release the sale deposit monies.

The court denied all the motions on December 7, 2017, but ordered the sheriff to continue to hold the deposit. The court found plaintiff's $1000 payment was not a "bid" under the September 15, 2017 order because it was not made by a third-party bidder. The court explained plaintiff's nominal bid would "create . . . a severe deficiency for a defaulting bidder" and allow plaintiff a "windfall" when the property was resold. Plaintiff sold the Hillsborough property in a private sale on October 5, 2018, for a gross contract price of $290,000, netting proceeds of $270,511.73.

We affirmed the September 15, 2017 order in December 2018. See Fed. Nat'l Mortg. Ass'n v. Cleaves, No. A-0664-17 (App. Div. Dec. 11, 2018) (slip. op. at 7). We agreed defendant was not entitled to vacate the sheriff's sale

4

because the property was sold "as is." Id. at 4-5. However, we did not determine which party would receive the deposit or in what amount. We said there was "nothing in the judge's order [that] foreclosed [defendant] from challenging the release of the monies based upon future events. Furthermore, all arguments raised by [defendant] regarding plaintiff's actual damages or any failure to mitigate damages were premature when briefed." Id. at 7.

In 2019, defendant requested release of the deposit. Using the formula from the September 15 and December 7, 2017 orders — that it now sought to enforce using the contract price from the private sale — defendant requested the full deposit less the difference between the first bid of $297,000 and the second bid of $290,000, minus the sheriff's costs for the first sale. Plaintiff filed a cross-motion requesting release of the entire deposit. It now claimed to have incurred damages of $62,329.18[1] due to defendant's default on the June 6, 2017 bid.

The court granted defendant's motion on August 23, 2019. It ordered the deposit released to defendant after deducting the difference between the first sale ($297,000) and the sale to a third-party bidder ($290,000) and the sheriff's

---

[1] It claimed these costs were comprised of $38,528.20 in out-of-pocket expenses and $23,800.98 for the "difference in net sales proceeds and timing of when those proceeds were received."

costs for the June 6, 2017 sale. The court rejected plaintiff's request for consideration of plaintiff's out-of-pocket expenses including taxes, rehabilitation costs, brokers' fees and cleanup costs. Referencing that plaintiff had ownership of the property for a year before selling it, the court observed "they made their internal decisions, which they're entitled to do, but I don't believe they're entitled to then foist those decisions upon a . . . bidder who defaulted." It rejected plaintiff's request — made for the first time — for a plenary hearing. Plaintiff's request for a stay was denied, but the court delayed the date to release the deposit.

Plaintiff appealed the December 7, 2017 and August 23, 2019 orders. We granted a stay pending appeal on October 10, 2019.[2]

On appeal, plaintiff argues the trial court misapplied the law and abused its discretion in the manner it calculated damages. Plaintiff contends it should have received the full amount of the deposit based on the difference between the first bid by defendant of $297,000 and the second bid by plaintiff of $1000 even if it was the only bidder. Plaintiff also argues the court erred by not taking into

_____

[2] Plaintiff's brief advises the funds were paid over to defendant prior to this and defendant may not be "in a financial position to repay the money into [c]ourt as per the order."

A-0158-19

consideration certain incidental or consequential damages as a direct and proximate cause of defendant's breach.

## II.

"As a general rule, courts exercising their equitable powers are charged with formulating fair and practical remedies appropriate to the specific dispute." Kaye v. Rosefielde, 223 N.J. 218, 231 (2015). "In fashioning relief, the Chancery judge has broad discretionary power to adapt equitable remedies to the particular circumstances of a given case." U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 476 (2012) (quoting Marioni v. Roxy Garments Delivery Co., 417 N.J. Super 269, 275 (App. Div. 2010)). "While equitable discretion is not governed by fixed principles and definite rules, '[i]mplicit [in the exercise of equitable discretion] is conscientious judgment directed by law and reason and looking to a just result.'" Kaye, 223 N.J. at 231 (alterations in original) (quoting In re Estate of Hope, 390 N.J. Super. 533, 541 (App. Div. 2007)).

The trial court did not err by disallowing use of plaintiff's $1000 payment in the damage formula because this was an appropriate exercise of its discretion. Plaintiff increased the stopping bid by $24,000 just four months after the first sheriff's sale even though defendant claimed the property was structurally

A-0158-19

unsound. Plaintiff did not explain the increase or contest defendant's representation that plaintiff set the upset price at $321,000. A lower price might have been expected, given the property's condition. There was no evidence repairs had been made by that time. When no other bids were made, plaintiff paid a nominal amount for the property. The trial court did not change its previously announced damages formula from that set forth in the September 2017 order; it simply determined that plaintiff's $1000 payment did not qualify as a bid because of the ability of plaintiff to control the distribution of the deposit to its advantage by setting the upset price.

By rejecting application of the $1000 payment, the court applied the formula using bids from two third-party sales: one from the first sheriff's sale and one from the second. When the second sheriff's sale resulted in plaintiff taking back the property rather than a sale to a third-party, the trial court applied the gross contract price from plaintiff's private sale because that was a third-party sale.

We agree that was an appropriate exercise of discretion. It achieved the same kind of equity the legislature contemplated in the situation where a bidder defaults by not posting a twenty percent deposit. Under N.J.S.A. 2A:50-64(a)(4), the bidder that cannot post the deposit,

shall be in default and the sheriff shall immediately void the sale and proceed further with the resale of the premises without the necessity of adjourning the sale, without renotification of any party to the foreclosure and without the republication of any sales notice. Upon such resale, the defaulting bidder shall be liable to the foreclosing plaintiff for any additional costs incurred by such default including, but not limited to, any difference between the amount bid by the defaulting bidder and the amount generated for the foreclosing plaintiff at the resale. In the event the plaintiff is the successful bidder at the resale, the plaintiff shall provide <u>a credit for the fair market value</u> of the property foreclosed.

[N.J.S.A. 2A:50-64(a)(4) (emphasis added).]

When the trial court disallowed use of the $1000 payment and applied the gross contract amount from plaintiff's private sale, the court incorporated the notion of fair market value in its damages formula.

This result is not precluded by <u>Investors & Lenders v. Finnegan</u>, 249 N.J. Super. 586, 592 (Ch. Div. 1991). That case involved successful bidders at a sheriff's sale who did not satisfy the bid requirements. The court observed that a bidder's promise to pay and its deposit are the bases for awarding the property. <u>Ibid.</u> If these conditions are not met, the bidder has "breached his contract." <u>Ibid.</u> The party that breaches "is liable to pay money damages." <u>Ibid.</u> Under <u>Investors</u>, this is to be evaluated by a resale of the property. <u>Ibid.</u> We are

satisfied the trial court exercised appropriate discretion by using the gross contract price from the private sale in the damages formula.

Plaintiff contends the trial court should have considered certain incidental and consequential damages. These include but are not limited to taxes, rehabilitation costs, brokers' fees and clean-up costs incurred after the second sheriff's sale and before the private sale. The trial court assumed the out-of-pocket expenses plaintiff was claiming as damages should not be considered because they could be manipulated to plaintiff's advantage. Defendant also argued plaintiff did not mitigate its damages. There was no proof of any of these alleged expenses.

The decision not to consider plaintiff's out-of-pocket expenses was inconsistent with the conditions of the sale in this case. Here, the sheriff required that,

> if the purchaser fails to comply with any of the conditions of the sale the property will be sold a second time, the former purchaser being responsible for <u>all losses and expenses</u>, including but not limited to Sheriff's fees, Sheriff's commission and Attorney's fees incurred by the Sheriff's Office but receiving no benefit from such sale.
>
> [Emphasis added.]

10

The statute that concerns defaulting bidders at a sheriff's sale also permits consideration of "additional costs" due to the default. See N.J.S.A. 2A:50-64(a)(4) (providing that "the defaulting bidder shall be liable to the foreclosing plaintiff for any additional costs incurred by such default including, but not limited to . . ." the difference between the first and second sale). Thus, plaintiff's additional costs related to defendant's default should have been evaluated by the trial court.

We reject plaintiff's argument that doctrine of judicial estoppel applies in this case. The judicial estoppel doctrine "only arises when a party advocates a position contrary to a position it successfully asserted in the same or a prior proceeding." Kimball Intern., Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 606 (App Div. 2000). "[T]here is the oft-cited requirement that in order to be judicially estopped from asserting a position contrary to a previously asserted position, a party must have 'succeeded in maintaining that position.'" Cummings v. Bahr, 295 N.J. Super. 374, 386 (App. Div. 1996) (quoting Chattin v. Cape May Greene, Inc., 243 N.J. Super. 590, 620 (App. Div. 1990)). It is generally recognized that "judicial estoppel is an 'extraordinary remedy,' which should be invoked only 'when a party's inconsistent behavior will otherwise result in a miscarriage of justice.'" Kimball, 334 N.J. Super. at 608. (quoting Ryan

11

Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996)).

Frankly, both parties have made arguments that supported the trial court's damages formula when it helped their position. Plaintiff requested that the September 2017 formula be applied to its attempt to sell the property for $321,000. Defendant requested to use the formula in August 2019 when arguing that plaintiff's out-of-pocket expenses should not be considered in the damages formula. At that point, defendant supported the formula that it argued against in the previous order.

The trial court has not changed its position. Its damages formula contemplated sales to third parties.

Our prior opinion did not endorse a specific damages formula. We expressly provided that the amount of the refund was premature in that case. The issues raised now were not squarely before us in our earlier opinion. Cleaves, slip op. at 7.

We are constrained to reverse the December 7, 2017 and August 23, 2019 orders to the extent plaintiff's alleged out-of-pocket expenses directly attributable to defendant's default were not considered by the trial court. We remand the case for a plenary hearing limited to that issue. The hearing is to

include plaintiff's efforts or failure to mitigate these expenses. The amount awarded cannot exceed the amount of the deposit. This litigation is about the deposit. Plaintiff never made a claim that it was entitled to damages more than the amount of the deposit. The trial court shall conduct a case management conference within thirty days and permit discovery on this limited issue.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0158-19