**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2578-19

IN THE MATTER OF
WILFREDO GUZMAN,
ROCKAWAY TOWNSHIP,
POLICE DEPARTMENT.

Submitted April 28, 2021 – Decided June 7, 2021

Before Judges Alvarez, Geiger, and Mitterhoff.

On appeal from the New Jersey Civil Service Commission, Docket No. 2020-34.

Laddey, Clark & Ryan, LLP, attorneys for appellant Rockaway Township (Thomas N. Ryan and Nicole C. Tracy, on the briefs).

Caruso Smith Picini, P.C., attorneys for respondent Wilfredo Guzman (Timothy R. Smith, of counsel; Zinovia H. Stone, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey Civil Service Commission (Pamela N. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Rockaway Township appeals from the January 15, 2020 Civil Service Commission (Commission) final agency decision that the Township could not impose disgorgement of six months of Wilfredo Guzman's accrued benefits, or 1040 hours of accrued leave time, as a N.J.S.A. 11A:2-20 penalty. We affirm.

The Township issued a final notice of disciplinary action (FNDA) on June 10, 2019, terminating defendant from his employment as a police officer effective from the date of his suspension, April 24, 2017, and fining him the equivalent of 1040 hours. Guzman appealed from the FNDA directly to the Office of Administrative Law (OAL), as authorized by N.J.S.A. 40A:14-200 to -212. The statutes permit a police officer appealing the imposition of discipline to file directly with the OAL and the Commission simultaneously, "to facilitate the timely rendering of a final determination." In re Restrepo, Dep't of Corrs., 449 N.J. Super. 409, 418-19 (App. Div. 2017).

The termination was triggered by defendant's guilty pleas to two counts of second-degree official misconduct, N.J.S.A. 2C:30-2(a). Those offenses were included in two indictments charging Guzman with two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4); a total of ten counts of second-degree official misconduct, N.J.S.A. 2C:30-2(a); and five counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(b)(5)(B) and N.J.S.A.

2C:24-4(a). It was alleged that, on at least one occasion, the sexual misconduct with a minor took place while Guzman was on duty in one of the department's satellite locations.

The ALJ ruled that, regardless of the troubling nature of the charges, the disgorgement of accrued benefits sought by the Township did not fit into any category of discipline authorized by the Civil Service Act, N.J.S.A. 11A:2-20, or implementing regulations. Restitution is authorized, but, the ALJ explained, Commission practice was to impose fines only to cover the "cost of lost or damaged property" or "additional costs . . . incurred because of the employee's conduct . . . ." Since the Township "suspended Guzman without pay, and [he] did not agree to a fine," and the Township was not seeking restitution for property or costs, there was no basis to fine petitioner the pre-suspension benefits. The ALJ also determined the Township did not prove petitioner breached any fiduciary duty in connection with benefits accrued over the six-month period, because petitioner only pled guilty to offenses occurring on two separate days. The Commission adopted the ALJ's findings.

On appeal, the Township raises the following points:

POINT I

THE COMMISSION ERRED AND ITS FINAL
ADMINISTRATIVE ACTION MUST BE
REVERSED.

POINT II

GUZMAN FAILED TO PERFORM HIS DUTIES AS
A POLICE OFFICER DURING THE PERIOD IN
WHICH HE ENGAGED IN EGREGIOUS,
CRIMINAL CONDUCT.

POINT III

THE IMPOSITION OF A FINE AGAINST GUZMAN
AS RESTITUTION IS EXPRESSLY AUTHORIZED
BY STATUTE.

POINT IV

BECAUSE GUZMAN BREACHED HIS DUTY OF
LOYALTY TO THE TOWNSHIP, IMPOSITION OF
THE AT-ISSUE FINE IS PROPER.

"In order to reverse an agency's judgment, an appellate court must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" In re Stallworth, 208 N.J. 182, 194 (2011) (alteration in original) (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). To determine whether an action is arbitrary, capricious, or unreasonable, the court will examine:

A-2578-19

(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law;

(2) whether the record contains substantial evidence to support the findings on which the agency based its action; and

(3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (quoting Stallworth, 208 N.J. at 194).]

Appellate review calls for "deference . . . to policymaking and fact-finding, and to a lesser extent, to statutory interpretation by an agency." In re Distrib. of Liquid Assets upon Dissolution of Union Cnty. Reg'l High Sch. Dist. No. 1, 168 N.J. 1, 10-11 (2001). "An appellate court 'defer[s] to an agency's interpretation of . . . [a] regulation, within the sphere of [its] authority, unless the interpretation is "plainly unreasonable."'" In re Eastwick Coll. LPN-to-RN Bridge Program, 225 N.J. 533, 541 (2016) (alterations in original) (quoting U.S. Bank, N.A. v. Hough, 210 N.J. 187, 200 (2012)). "[A]dministrative agencies are allowed some leeway to permit them to fulfill their assigned responsibilities," so "a reviewing court should strive to 'give substantial deference to the interpretation [the] agency gives to a statute that the agency is

charged with enforcing.'"  In re Virtua-W. Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 423 (2008) (second alteration in original) (quoting Saint Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 15 (2005)).

The protocols for disciplinary actions against public employees in civil service jurisdictions are prescribed by the Civil Service Act.  N.J.S.A. 11A:2-20; N.J.S.A. 11A:2-15; N.J.A.C. 4A:2-2.4.  The Township had no entitlement to restitution of this type under these sections.  In support of its position, as it did in the earlier proceedings, the Township cites to precedent having no bearing on this matter, such as the Crime Victim's Bill of Rights, N.J.S.A. 52:4B-34 to -38.

Generally, in the criminal context, "[r]estitution is proper only when the loss sustained by a victim is the direct result of the criminal offense."  State v. Topping, 248 N.J. Super. 86, 89 (App. Div. 1991).  "[A]ctual loss from defendant's actions must be demonstrated."  State v. Martinez, 392 N.J. Super. 307, 318 (App. Div. 2007).

As the Township is not the direct victim of petitioner's crimes, it would not be appropriate to award it restitution pursuant to the Crime Victim's Bill of Rights, the Attorney General's Standards for Crime Victims, or the Attorney General's Standards for Sexual Assault Victims.  We have previously explained that under the Crime Victim's Bill of Rights, for example, restitution should flow

to the victim. Felicioni v. Admin. Off. of Cts., 404 N.J. Super. 382, 394 (App. Div. 2008).

Restitution is authorized discipline under the Civil Service Act. See N.J.S.A. 11A:2-20. The flaw in the Township's argument, however, is that no provision in the law authorizes disgorgement of accrued leave benefits, a form of sanction the Township attempts to disguise as "restitution."

The Commission is authorized to impose fines on police officers in civil service jurisdictions only if it is a sanction chosen by the employee, in lieu of a suspension, or a form of restitution. N.J.S.A. 11A:2-20.

The Commission has promulgated the following rule concerning fines:

> (c) An appointing authority may only impose a fine as follows:
>
> 1.    As a form of restitution;
>
> 2.    In lieu of a suspension, when the appointing authority establishes that a suspension of the employee would be detrimental to the public health, safety or welfare; or
>
> 3.    Where an employee has agreed to a fine as a disciplinary option.
>
> [N.J.A.C. 4A:2-2.4(c).]

The regulation faithfully tracks the plain language of N.J.S.A. 11A:2-20. The Commission's interpretation of the legislative mandate as excluding the

7

sanction the Township levied against Guzman is entitled to great deference. In re Virtua, 194 N.J. at 423.

"A State agency's interpretation of its own regulations is presumed to be valid." In re Hearn, 417 N.J. Super. 289, 299 (App. Div. 2010). The interpretation will stand unless "plainly unreasonable" because of the "experience and specialized knowledge [the agency brings] to its task of administering and regulating a legislative enactment within its field of expertise." Eastwick Coll., 225 N.J. at 542 (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). "To apply the 'plainly unreasonable' standard, [this court] first consider[s] the words of the statute, affording to those words 'their ordinary and commonsense meaning,'" and uses the same tools it would when interpreting a statute. Ibid. (quoting In re Election, 201 N.J. at 263).

Regulations are given the effect of their plain language in the context of the entire regulatory scheme. J.H. v. R & M Tagliareni, LLC, 239 N.J. 198, 214 (2019). Only "[w]here there is ambiguity, or where a literal reading would lead to an absurd result, [may the interpretation be informed by extrinsic] evidence of the meaning the drafter has assigned." Newton Med. Ctr. v. D.B., 452 N.J. Super. 615, 621 (App. Div. 2018) (quoting In re N.J. State Funeral Dirs. Ass'n,

427 N.J. Super. 268, 274 (App. Div. 2012)).  This includes relying on the "long-standing meaning ascribed to the language by the agency charged with its enforcement."  Bedford v. Riello, 195 N.J. 210, 222 (2008); Eastwick Coll., 225 N.J. at 542.

N.J.A.C. 4A:2-2.4, like the underlying statute, authorizes the imposition of a fine "[a]s a form of restitution."  The ALJ's opinion, adopted by the Commission, determined restitution was only appropriate to reimburse the Township for damaged property or expenses, neither of which was present here.

The ALJ looked to past cases to make this determination.  Although we agree that an agency's longstanding practice is enlightening where disputed language is unclear, the regulation mirrored the language of the statute and was explicit.  It uses a term of art:  "restitution."  See Restatement (Third) of Restitution § 1 cmt. c, at 6 (Am. Law Inst. 2010).  When we construe statutes, we give "meaning to the term of art the Legislature selected."  In re Plan for the Abolition of the Council on Affordable Hous., 214 N.J. 444, 470 (2013); see also State v. Sailor, 355 N.J. Super. 315, 323-24 (App. Div. 2001) (using the term of art definition where restitution was a statutorily authorized remedy).

"Restitution is defined as the 'return or restoration of some specific thing to its rightful owner or status; compensation for benefits derived from a wrong

done to another; compensation or reparation for the loss caused to another.'" Sailor, 355 N.J. Super. at 324 (quoting Black's Law Dictionary 1315 (7th ed. 1999)). It is especially appropriate when "employed to deter improper conduct" and unjust enrichment at the expense of taxpayers. Thompson v. Atlantic City, 190 N.J. 359, 383 (2007). But the outlines of unjust enrichment at the expense of taxpayers are not apparent from the record.

Restitution is more expansive than reimbursement for damaged property or costs due to the employee's conduct, so the ALJ did not have a statutory or regulatory basis to narrow the term. However, there is no New Jersey law squarely on point determining whether restitution and disgorgement are distinct remedies. Most cases refer to them separately, saying either "restitution and disgorgement" or "restitution or disgorgement." See Edwards v. Prudential Prop. and Cas. Co., 357 N.J. Super. 196, 202 (App. Div. 2003) (explaining plaintiffs sought "disgorgement and restitution of defendants' 'wrongful profits and revenue'"); Bhagat v. Bhagat, 217 N.J. 22, 27 (2014) (explaining plaintiffs sought "disgorgement or restitution of funds and property").

If the relief the Township seeks is characterized as disgorgement, it would fall outside the scope of the statute and the corresponding regulation. We have previously said, "[d]isgorgement is designed to deprive the wrongdoer of all

gains flowing from the wrong rather than to compensate the victim of the fraud. In modern legal usage the term has frequently been extended to include a dimension of deterrence." Cnty. of Essex v. First Union Nat. Bank, 373 N.J. Super. 543, 553 (App. Div. 2004) (quoting Warren v. Century Bankcorporation, Inc., 741 P.2d 846, 852 (Okla. 1987)), aff'd in part, rev'd on other grounds, 186 N.J. 46, 58 (2006).

Admittedly, disgorgement is an appropriate form of criminal restitution because it has a deterrent effect. See Felicioni, 404 N.J. Super. at 394-395 ("Like punishment, rehabilitation and deterrence, the other aims of criminal restitution, disgorgement of the ill-gotten gain[s] is a far[-]reaching goal quite distinct from the traditional compensatory rationale of the civil law." (quoting State v. Pulasty, 259 N.J. Super. 274, 283-84 (App. Div. 1992))); State v. DeAngelis, 329 N.J. Super. 178, 187 (App. Div. 2000); State v. Locane, 454 N.J. Super. 98, 128 (App. Div. 2018) ("Requiring a defendant to pay restitution to a victim not only compensates the victim, but rehabilitates the wrongdoer[,] . . . whether by requiring disgorgement or compensation for losses."). But neither the Township nor the Commission is a criminal tribunal.

The Restatement indicates disgorgement is a form of restitution, stating "[r]estitution measured by the defendant's wrongful gain is frequently called

11

'disgorgement.'" Restatement (Third) of Restitution § 51 cmt. a, at 204 (Am. Law Inst. 2010). As characterized by the Restatement, it is a remedy imposed against "conscious wrongdo[ers] . . . ." Ibid.

Federal law, however, recognizes a distinction between restitution and disgorgement. The Third Circuit has explained:

> In contrast [to disgorgement], a claim for restitution seeks to compensate a plaintiff for a loss, so a financial loss is required to bring such a claim. As the Court of Appeals for the Fifth Circuit has explained, "disgorgement is not precisely restitution. Disgorgement wrests ill-gotten gains from the hands of a wrongdoer. It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs. Disgorgement does not aim to compensate the victims of the wrongful acts, as restitution does."
>
> [Edmonson v. Lincoln Nat'l Life Ins. Co., 725 F.3d 406, 415 n.3 (3d Cir. 2013) (quoting S.E.C. v. Huffman, 996 F.2d 800, 802 (5th Cir. 1993)).]

The United States Supreme Court also makes a distinction. See Liu v. SEC, ___ U.S. ___, 140 S. Ct. 1936, 1943 (2020) ("While the Court acknowledged that disgorgement was a 'limited form of penalty' insofar as it takes money out of the wrongdoer's hands, it nevertheless compared disgorgement to restitution that simply 'restor[es] the status quo[]' . . . ." (quoting Tull v. United States, 481 U.S. 412, 422 (1987))); Kokesh v. SEC, ___ U.S. ___, 137 S. Ct. 1635, 1644 (2017) ("Courts have required disgorgement 'regardless of whether the disgorged funds

12

will be paid to such investors as restitution.'" (quoting SEC v. Fischbach Corp., 133 F.3d 170, 176 (2d Cir. 1997))).

New Jersey law tends to categorize disgorgement as a form of restitution—but in this case, disgorgement would be the return of benefits Guzman earned while committing crimes instead of fulfilling his duties as an officer. See Kaye v. Rosefielde, 223 N.J. 218, 231-32 (2015). In other words, disgorgement might be available were the municipality able to establish that Guzman committed crimes while on duty, meaning that he engaged in the improprieties instead of performing his work duties and thereby also falsified his employment records. It has not done so.

The Kaye court held that "[i]n imposing the remedy of disgorgement, depending on the circumstances, a trial court should apportion the employee's compensation, rather than ordering a wholesale disgorgement that may be disproportionate to the misconduct at issue." Kaye, 223 N.J. at 237. As the ALJ noted here, the Township had "not proven that Guzman breached his duty of loyalty for the six-month period of [his] salary it seeks to disgorge; instead, [the Township] relie[d] upon Guzman's plea of guilty to two counts of official misconduct occurring on only two days."

In fact, the Township did not introduce any evidence to show what portion of the 1040 hours are reduced by the time in which he committed offenses while on duty. In other words, it did not establish a period where the benefits were, "in effect, unearned." Kaye, 223 N.J. at 233. Unless the Township can carry this theoretical burden, the Commission has no grounds to reduce the benefits. From this record, it does not appear the Township can do so.

The Township's reliance on Kaye for the proposition that disgorgement of past compensation is an available remedy when an employee breaches their duty of loyalty is misplaced. The case did not involve public employment or administrative proceedings—it established only that a court sitting in equity could make disgorgement an available remedy where there is a breach of an employee's fiduciary duty. Kaye, 223 N.J. at 231-32. The case stands for the proposition that "[i]n the array of equitable remedies available to the trial court, one option is the 'disgorgement' of the disloyal employee's past compensation." Ibid. Meanwhile, the Commission, an agency, does not have such discretion. It may only impose discipline consistent with the applicable statutes and regulations. N.J.S.A. 11A:2-20; N.J.S.A. 11A:2-15; N.J.A.C. 4A:2-2.4. Although the Commission interpreted the definition of "restitution" too narrowly, the outcome even under a broader interpretation would have been the

same.  See Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (explaining appellate courts review orders, not opinions).  The Commission could not have imposed disgorgement under a separate breach of fiduciary duty theory.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION